**Freddie L. STARKS, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 45A03–9211–CR–379.

Court of Appeals of Indiana, Third District.

Sept. 20, 1993.

Mark A. Bates, Crown Point, for appellant-defendant.

Pamela Carter, Atty. Gen., Geoff Davis, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

HOFFMAN, Judge.

Appellant-defendant Freddie L. Starks appeals his conviction for murder. Starks was sentenced to a forty-year term of imprisonment.

The evidence relevant to the appeal discloses that Starks, who was married, was having an affair with the victim, Kim Modisette. Starks was the assistant pastor at the church which Modisette attended. On August 7, 1991, Starks telephoned Modisette and the two argued. Starks threatened to kill her and stated that he would come to her house in a few minutes. Starks went to Modisette's home and took a butcher knife with him. Modisette was not home. Starks left.

Shortly thereafter, Starks went back to Modisette's house. There he spoke to Thelma Love, Modisette's mother. Starks told Love about the affair. He again left Modisette's home, after he apologized to Love for the affair.

Starks returned to his home. He explained to his wife that he had spoken to Love about the affair. Starks' wife telephoned Love to confirm that her husband had spoken to Love.

Starks again took the butcher knife and walked to Modisette's house. Starks saw her car. He walked to a telephone booth and called Modisette. Starks asked Modisette why she was avoiding him. Modisette suggested ending the relationship with Starks. Also, she told him she was thinking of leaving the church. Starks then threatened to cut Modisette's throat if she did not meet him at a designated place.

When Modisette failed to meet Starks, he returned to her home. Love answered the door. Starks told Love that he was returning Modisette's car keys. Modisette came to the door to speak with Starks. Starks and Modisette walked toward her car. Starks confronted Modisette. As Love watched from the window, it appeared that Starks and Modisette began to argue. Each time Modisette moved, Starks would follow.

Love called for Modisette to return to the house. Starks told Love that Modisette was not going anywhere. Love stated that she was going to call the police. Starks pulled the knife out of his pocket and stated that he was going to kill Modisette. He stabbed Modisette repeatedly while she attempted to flee.

A neighbor hit Starks with a board until it broke. Starks discontinued stabbing Modisette and looked at the neighbor. Speaking to the neighbor, Starks stated, "You can't hurt me, bitch." Starks turned back to Modisette. He allowed Modisette to rise to her feet and walk a few steps to her car. He then resumed the stabbing. He continued to stab Modisette after she

again fell to the ground. Starks stopped the attack, walked to Modisette's porch, and announced his intention to wait for police.

Modisette died as a result of the multiple stab wounds.

When police arrived, Starks stated that he stabbed Modisette because he loved her. Later at the police station, Starks confessed to the killing and gave a statement as to the events leading to Modisette's death. He explained that he believed that she had treated him poorly by attempting to terminate the relationship. Further, he stated that he did not want anyone to have her if he could not have her.

At the close of the trial, the jury returned a verdict of guilty as noted above. This appeal ensued.

Starks raises three issues for review:

(1) whether the trial court erred when it failed to grant his motion for a mistrial;

(2) whether the trial court erred when it failed to grant his motion for a judgment on the evidence; and

(3) whether the trial court improperly instructed the jury as to "sudden heat."

First, Starks complains that the trial court erred in failing to grant his motion for a mistrial made when the deputy prosecutor attempted to elicit statements made by Starks to a police officer while the officer was transporting Starks to the hospital. The statements were not disclosed during discovery.

On direct examination by the State, the officer testified that Starks began talking during the car ride. The officer was unsure whether Starks was talking to himself or to the officer. Starks interposed an objection before the statements were disclosed at trial. Starks contended that the statements were violative of the pre-trial discovery order.

At a hearing outside of the presence of the jury, the police officer explained that during a deposition he had not mentioned the statements. One or two days prior to trial, the officer told the deputy prosecutor that while en route to the hospital, Starks said that "she had gotten under his skin," and there "is a fine line between love and hate." The trial court excluded the evidence and denied Starks' motion for a mistrial. The trial court admonished the jury to disregard the officer's testimony that Starks had made statements to the officer.

Starks argued that a mistrial was appropriate because the deputy prosecutor had previously violated a discovery order in another case. Starks complained that due to the nondisclosure of the statements, counsel was unable to fully assess its impact upon his insanity and sudden heat defenses. The trial court declined to hold a hearing on previous violations. However, the court noted that only the State was prohibited from using the statements, not Starks, if he and his counsel believed the statements were exculpatory.

To determine whether prosecutorial misconduct has occurred requires a determination whether the conduct under all the circumstances placed the defendant in a position of grave peril to which he should not have been subjected. This position is measured by the probable persuasive effect of the misconduct on the jury's decision and whether repeated instances of misconduct occurred which would demonstrate a deliberate attempt to improperly prejudice the defendant. *Fox v. State* (1988), Ind., 520 N.E.2d 429, 430. The extreme sanction of mistrial is warranted only where no lesser measures can be expected to remedy the harm. *Jackson v. State* (1988), Ind., 518 N.E.2d 787, 789.

Here pursuant to Starks' request, the evidence was not admitted at trial. Moreover, Starks was given the option to use the statements if he and counsel believed they were exculpatory or would be of assistance to the defense. Starks was allowed to determine whether the evidence would or would not be presented to the jury. Starks chose the latter. His argument on appeal, that the evidence could have been viewed in an exculpatory light, ignores the reality that he requested exclusion of the evidence at trial. *See Berry v.*

*State* (1991), Ind.App., 574 N.E.2d 960, 963 (defendant cannot complain of error he induced court to make).

Starks has failed to demonstrate that he was placed in a position of grave peril due to any misconduct by the deputy prosecutor. At trial, Starks requested that the evidence not be admitted. Starks was also given the option of using the evidence if he believed that it was exculpatory. As noted by the State on appeal, other similar evidence was adduced at trial. Accordingly, Starks was not prejudiced by the trial court's ruling and a mistrial was not warranted.

Starks also alleges that the trial court erred by denying his motion for a judgment on the evidence thereby removing the murder charge from the jury's consideration and allowing it to deliberate only as to voluntary manslaughter. Although the State correctly notes that the challenge is precluded because Starks introduced evidence following the denial of his motion, *see Davidson v. State* (1991), Ind., 580 N.E.2d 238, 242 the issue will be addressed.

■ A judgment on the evidence is proper only in the absence of evidence on an essential issue, or where the evidence is without conflict and susceptible of only one inference, that being in favor of the accused. *State v. Goodrich* (1987), Ind., 504 N.E.2d 1023, 1024. Here, Starks contends that the State failed to negate the existence of sudden heat.

■ Voluntary manslaughter is distinguished from murder by the presence of sudden heat, a mitigating factor. *Roark v. State* (1991), Ind., 573 N.E.2d 881, 882. Sudden heat may be found when there is sufficient provocation to excite in the mind of the defendant emotions such as anger, rage, sudden resentment or terror, sufficient to obscure the reason of an ordinary person. *Fox v. State* (1987), Ind., 506 N.E.2d 1090, 1093. The State presented sufficient evidence to negate the presence of sudden heat. In his statement, Starks admitted that he threatened to kill Modisette then took the knife with him on his first trip to her home on the day of the killing. He left Modisette's home, and returned later to speak with her mother. He again returned to his home and spoke with his wife before retrieving the knife and walking to a telephone booth to call Modisette. Starks threatened Modisette during his conversation with her. Starks then walked to a building to wait for Modisette. He walked to Modisette's home when she did not meet him.

Only after many conversations and after several walking trips did Starks carry through on his threat to kill Modisette. Also, during the attack on Modisette the neighbor diverted Starks' attention by hitting him with a board. Starks discontinued stabbing Modisette long enough to respond to the neighbor and to allow Modisette to arise and walk before he resumed stabbing her. The evidence demonstrated that Starks had ample time for cool reflection prior to killing Modisette. The trial court properly denied Starks' motion for a directed verdict.

Finally, Starks contends that the trial court erred in giving final instruction No. 9 which stated:

"Mere passion or anger is not alone sufficient to make an intentional killing voluntary manslaughter. The sudden heat of passion sufficient to reduce murder to manslaughter must be accompanied by adequate provocation. Mere words do not constitute provocation which will reduce an unlawful killing from murder to manslaughter."

Starks does not contend that the instruction was erroneous; instead, he complains that the instruction was superfluous because Final Instructions Nos. 7 and 8 adequately instructed the jury regarding sudden heat. Thus, according to Starks, Instruction No. 9 could only serve to confuse the jury.

■ The manner of instructing the jury lies within the sound discretion of the trial court and will not be disturbed unless an instruction error, when considered with all instructions as a whole and in reference to each other, is such that the charge to the jury misstates the law or otherwise mis-

leads the jury as to the law applicable to the case. *See Reaves v. State* (1992), Ind., 586 N.E.2d 847, 855; *Daniel v. State* (1991), Ind., 582 N.E.2d 364, 370. In the present case, the instructions are somewhat redundant. However, each instruction is necessary to complete the law applicable to the case. Neither Instruction No. 7, nor No. 8, contains a definition of the provocation necessary to constitute "sudden heat." The instructions when considered as a whole and with reference to each other properly state the law and are not confusing or misleading.

There being no finding of error, the judgment of conviction for murder is affirmed.

Affirmed.

GARRARD and SHIELDS, JJ., concur.