**Daniel Joshua COHEN, Andre Dwight Glenn, and Nathan Randell Glenn, Appellants–Defendants,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 45A04–9809–CR–467.

Court of Appeals of Indiana.

Aug. 5, 1999.

Transfer Denied Oct. 15, 1999.

Jeff Schlesinger, Appellate Public Defender, Crown Point, Indiana, Attorney for Appellant Daniel Joshua Cohen.

Charles E. Stewart, Appellate Public Defender, Crown Point, Indiana, Attorney for Appellant Andre Dwight Glenn.

Mark A. Bates, Appellate Public Defender, Crown Point, Indiana, Attorney for Appellant Nathan Randell Glenn.

Jeffrey A. Modisett, Attorney General of Indiana, Michael R. McLaughlin, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

BROOK, Judge

### Case Summary

Appellants-defendants Daniel Joshua Cohen ("Cohen"), Andre Dwight Glenn ("Andre"), and Nathan Randell Glenn ("Nathan") appeal from their convictions for attempted murder, a Class A felony,[1] and battery as a Class C felony.[2]

### Issues

Nathan presents two issues for review, which we restate as follows:

(1) whether the trial court erred in admitting into evidence a copy of State's Exhibit B ("Exhibit B"), the photographic lineup containing Nathan's picture, used by the victim to identify him; and

(2) whether the trial court committed fundamental error in instructing the jury on accomplice liability and intent to kill.

Cohen presents one issue for review: whether the trial court erred in admitting into evidence a copy of State's Exhibit C ("Exhibit C"), the photographic lineup containing Cohen's picture, used by the victim to identify him.

Andre presents a single issue for our review: whether the State presented sufficient evidence to sustain his conviction for attempted murder and battery.

We raise one issue *sua sponte:* whether the trial court properly merged the Defendants' convictions of the lesser included offense of battery with their convictions of and sentences for the greater offense of attempted murder.

### Facts and Procedural History

The facts most favorable to the judgment reveal that on the evening of May 9, 1998, Johnny Thomas ("Thomas") was working as a security guard for a gas station/mini mart located in Gary, Indiana. After his shift ended at approximately 12:20 a.m. on May 10, 1998, Thomas returned to his apartment building. Upon arriving home, Thomas went to Cohen's first-floor apartment and purchased $10.00 worth of crack cocaine from Cohen. Andre and Nathan were in Cohen's apartment during the purchase. After purchasing the crack cocaine, Thomas left Cohen's apartment, returned to his own apartment on the third floor, and smoked the cocaine. Afterwards, he returned to Cohen's apartment to purchase more cocaine.

After smoking the second batch of crack cocaine, Thomas left the apartment building

---

1. IND. CODE § 35–42–1–1(1) (murder) and IND. CODE § 35–41–5–1(a) (attempt).

2. IND. CODE § 35–42–2–1(a)(3). In addition, we shall refer to the named appellees in this opinion collectively as "the Defendants" unless otherwise specified.

to purchase some cigarettes. Upon returning to the apartment building, Thomas overheard Cohen tell Andre and Nathan, "That guy [Thomas] is snitching, I heard him talking with the landlord." As Thomas entered Cohen's apartment, Cohen came at him with a gun, causing Thomas to flee the apartment building. As Cohen chased Thomas, he fired a number of shots at him, yelling, "[D]ie motherfucker die."

Apparently, the Defendants ran to Cohen's car to chase after Thomas. Thomas ran to the gas station/mini mart where he worked and begged the night attendant to let him in. As he was pounding on the door, Thomas saw Andre and Nathan run a red light and pull into the gas station. Andre jumped out of the car, chased Thomas, grabbed him, pulled him to the side of the gas station, and held him down. Thomas broke free, but was tackled from behind by Cohen and Andre. After a struggle, Thomas was on his knees with Cohen holding one of his arms and Andre holding the other. Nathan, then standing in front of Thomas, placed the gun on the back of Thomas's head and fired. As Nathan pulled the trigger, Thomas moved forward, causing the bullet to strike him in the neck. He slumped to the ground as the Defendants ran off. After the police arrived, Thomas spoke with Officer Keith A. Eller ("Officer Eller") of the Gary Police Department ("GPD") until the ambulance arrived. Thomas informed the officer that "Bones, Jay, and Dre" [3] had shot him.

On May 13, 1998, the State charged each of the Defendants by information as follows: Count I, attempted murder, a Class A felony, and Count II, battery as a Class C felony. On July 23, 1998, the State filed a motion to join Cohen's case with Andre's and Nathan's for trial. On August 3, 1998, the trial court granted the State's motion and consolidated the Defendants' cases.[4]

On August 3, 1998, a jury trial commenced. At trial, Thomas testified that while he was in the hospital, Sergeant Detective Phillip Pastoret ("Sgt.Pastoret") of the GPD had shown him two photographic lineups containing Nathan's and Andre's picture on May 12, 1998. Thomas testified that Exhibits A and B were in the same or similar condition to those that he had been shown in the hospital. Prior to the admission of Exhibits A and B, Nathan's asked Thomas preliminary questions, during which time he asked Thomas to describe the person in the bottom right corner of Exhibit A and to describe the person in the bottom left corner of Exhibit B. Thomas stated that he was unable to identify the persons because he had not memorized each individual in the photographic lineup. Nathan then objected to the admission of the photographic lineups, asserting that there was insufficient authentication. The trial court overruled this objection and admitted the photographs into evidence. Thomas then identified Andre from Exhibit A and Nathan from Exhibit B while looking at the photographic lineup.

The State then asked Thomas if he had been shown another group of photographs. Thomas testified that he viewed other photographs at his home after he was released from the hospital on June 12, 1998. Thomas was then shown Exhibit C, which he testified was in the same or similar condition to that which he had been shown at his home. Prior to the admission of Exhibit C, Cohen's counsel asked Thomas some preliminary questions about his signature on a June 12 statement, the day he viewed the photographic lineup. The signed statement indicated that Thomas had been shown the photographic array at the GPD. Thomas testified that he signed a statement at the time of viewing, but reaffirmed that he had never been to the GPD to view any of the photographic lineups. Cohen objected to Exhibit C being introduced into evidence on the basis of insufficient foundation. The trial court overruled the objection and admitted the photographic lineup into evidence. Thomas identified Cohen as one of the assailants from Exhibit C and also identified the Defendants in court as the assailants involved in his attack.

3. The record indicates that "Bones," "Jay" and "Dre" are the respective nicknames of Cohen, Nathan and Andre.

4. At the time the State filed its motion for joinder for Cohen, Andre's and Nathan's cases had already been joined; however, the record does not indicate when their cases were consolidated.

At the conclusion of the State's case-in-chief, the Defendants moved for a directed verdict, arguing that the State had failed to carry its burden of proof. The trial court denied their motion. The trial court then discussed the final instructions. Nathan objected to the accomplice liability instruction because it did not state that the accomplices had to share the necessary mens rea to support a conviction for attempted murder. Nathan also objected to the intent-to-kill instruction, arguing that the instruction unduly emphasized the brutality of the attack. Although Nathan objected to the instructions, he did not have any suggested alternative written instructions to present to the trial court. The trial court overruled his objection.

On August 5, 1998, the jury returned guilty verdicts on Counts I and II against the Defendants. The trial court entered judgments of conviction upon both offenses; however, it merged the battery counts with the attempted murder counts, sentencing the Defendants only on the attempted murder counts. The trial court sentenced the Defendants as follows: on August 31, 1998, Andre was sentenced to twenty-five years; on September 2, 1998, Nathan was sentenced to thirty years; and on September 3, 1998, Cohen was sentenced to twenty-five years.

### Discussion and Decision

### I. Admissibility of the Photographic Lineup

■ A trial judge has broad discretion to determine the admissibility of photographic evidence, and we will not reverse the trial court's decision to admit such evidence absent an abuse of discretion. *Salone v. State*, 652 N.E.2d 552, 556 (Ind.Ct.App.1995), *trans. denied*. Under Ind. Evidence Rule 901, exhibits must be authenticated or identified prior to their admission into evidence. To establish a proper foundation for the admission of exhibits, there must be a "reasonable probability that the exhibit is what it purports to be and that its condition is substantially unchanged as to any material feature." *Newman v. State*, 675 N.E.2d 1109, 1111 (Ind.Ct.App.1996). Absolute proof of authenticity is not required. *Id.* A proper foundation for the introduction of physical evidence is laid if a witness is able to identify the item and the item is relevant to the disposition of the case. *Bell v. State*, 610 N.E.2d 229, 233 (Ind.1993).

### A. Sufficiency of the Authentication of Exhibit B

Nathan asserts that the trial court committed reversible error in allowing Exhibit B into evidence because the State failed to lay an adequate foundation for its admission. In particular, Nathan argues that Thomas's testimony failed to sufficiently authenticate Exhibit B because he had not memorized all the faces of the individuals in the lineup and because he could not say that Exhibit B was the same or in substantially the same condition as it was when he first saw the lineup.

■ When the testimony of a witness is used to authenticate a photograph, the witness's failure to identify specific details or items in the photograph does not render it inadmissible. *Hutchinson v. State*, 515 N.E.2d 514, 515 (Ind.1987). Instead, a witness's uncertainty as to the specific details and items in the photograph goes only to the weight of the evidence. *Id.* A defendant can challenge the adequacy of the foundation; however, he must present evidence that does more than raise a mere possibility that the evidence could have been tampered with. *Bell*, 610 N.E.2d at 233. Additionally, there is a presumption of regularity in the handling of exhibits by public officers, and a presumption that public officers discharge their duties with due care. *Id.* Moreover, any gaps in the chain of custody would go to the weight of the evidence and not to its admissibility. *Id.*

■ Here, Nathan does not provide this Court with any evidence that would indicate that the photographic lineup was tampered with. He asserts that because Thomas did not memorize the twelve faces in the pictures he was shown, he lacks adequate knowledge to sufficiently authenticate the lineup. During preliminary questioning, Thomas was asked to describe the person in the bottom right-hand corner of Exhibit B. Thomas could not do this and indicated that the only persons he memorized were the Defendants. Counsel's expectations of Thomas were un-

reasonable. It is well established that a witness need not identify each and every detail in the photograph. *See Hutchinson,* 515 N.E.2d at 515. Thomas viewed the photographic display used in the pretrial identification and testified that it was the same or similar to the photographic lineup he was shown on May 12, 1998. Therefore, we find that Exhibit B was sufficiently authenticated.

### B. Sufficiency of the Foundation for Exhibit C

Cohen also contends that the trial court erred in allowing Exhibit C into evidence because the State failed to lay an adequate foundation for its admission. In particular, Cohen argues that Thomas's testimony that he had viewed Exhibit C at home differed from the statement signed by him at the time of viewing the photographic array, indicating that he viewed the lineup at the GPD.[5]

Thomas testified that Exhibit C was the same or substantially similar to that which he had been shown by Sgt. Pastoret on June 12, 1998, at his home. However, Cohen maintains that Exhibit C was shown to Thomas at the GPD, as indicated by a statement Thomas signed in conjunction with viewing the photographic array. Cohen asserts that because Thomas testified that he was shown Exhibit C at home, that exhibit was not the same photographic lineup shown to Thomas at the time he signed the statement. Additionally, Cohen argues that because Thomas did not remember the specific place where he had been shown the lineup or the specifics of the other pictures included in the lineup, he lacked the necessary knowledge to lay an adequate foundation for the admission of the photographs.

During preliminary questioning, Thomas stated that he signed three statements in conjunction with viewing the photographic lineups: two while in the hospital and the other one at home. Thomas also testified that he never executed a statement at the GPD, nor did he ever go to the GPD in conjunction with this incident. Cohen contends that because the signed statement and Thomas's testimony conflict, there was an inadequate foundation for the admission of Exhibit C. In authenticating a photograph, the witness must establish that the photograph is a true and accurate representation of what it is meant to portray. *Levi v. State,* 627 N.E.2d 1345, 1349 (Ind.Ct.App.1994), *trans. denied.* Here, Thomas testified that Exhibit C was an accurate representation of the photographic lineup shown to him by Sgt. Pastoret. Although the evidence before the jury was conflicting, it is not for this Court to invade the province of the jury and reweigh the evidence or reevaluate the credibility of the witnesses. *See Fields v. State,* 679 N.E.2d 898, 900 (Ind.1997).

Even assuming *arguendo* that the photographic arrays were improperly admitted into evidence, Nathan's and Cohen's arguments are still without merit. The erroneous admission of evidence is deemed harmless unless such error affected the substantial rights of the parties. *Sundling v. State,* 679 N.E.2d 988, 992 (Ind.Ct.App.1997). In determining whether reversal is mandated, the reviewing court must assess the probable impact of the improper evidence upon the jury. *Id.* The erroneous admission of evidence is harmless when there is substantial independent evidence of guilt such that it is unlikely that the erroneously admitted evidence played a role in the conviction. *Id.* at 994.

Thomas unequivocally identified Nathan and Cohen at trial as two of the three perpetrators involved in the attack. In addition, the circumstances surrounding the crime, including Thomas's previous knowledge of the Defendants, his close visual contact with the Defendants prior to the incident, and his initial identification of the assailants immediately after the incident, unquestionably made his in court identifications of the Defendants very convincing. Therefore, considering all these facts, even if the admission of the photographic lineups into evidence was improper, the admission of the photographic arrays was harmless error because there was sufficient independent evidence to support Nathan's and Cohen's convictions.

---

5. The statements to which Cohen refers were not included in the record for our review.

## II. Fundamental Error in Jury Instructions

We first observe, and Nathan concedes, that although he objected to the two allegedly erroneous jury instructions, he failed to tender alternative written instructions to the trial court. The State and Nathan assert that the failure to tender an alternative, substitute written instruction waives the alleged error for appellate review, despite an objection. Nathan attempts to avoid this procedural default by arguing that the jury instructions constituted fundamental error. However, in *Scisney v. State*, 701 N.E.2d 847 (Ind.1998), our supreme court addressed the issue of whether a party must tender an alternative, substitute written instruction in order to preserve a claim of instructional error. Our supreme court held that "appellate review of a claim of error in the giving of a jury instruction requires a timely trial objection clearly identifying both the claimed objectionable matter and the grounds for the objection, but that *the tender of a proposed alternative instruction is not necessarily required to preserve the claim of error for the giving of an allegedly erroneous instruction.* Prior decisions to the contrary are hereby overruled." [6] *Id.* at 849 (emphasis supplied). At trial, Nathan clearly made an objection to both instructions and stated the grounds for his objections. Therefore, because Nathan has not waived the alleged error, our analysis is not based upon fundamental error but is based upon whether the trial court erred in giving the jury instructions.

The manner of instructing the jury lies largely within the sound discretion of the trial court. *Utley v. State*, 699 N.E.2d 723, 727 (Ind.Ct.App.1998), *trans. denied.* " 'The purpose of an instruction is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict.' " *David v. State*, 669 N.E.2d 390, 391 (Ind.1996), quoting *Fox v. State*, 497 N.E.2d 221, 225 (Ind.

1986). This Court will not find reversible error unless the instruction, when considered as a whole and in reference to other instructions, is such that the charge misleads the jury as to the law applicable to the case. *Utley*, 699 N.E.2d at 727. In considering whether the trial court erred in giving or refusing an instruction, we consider the following factors: (1) whether the instruction correctly states the law; (2) whether there is evidence in the record to support the giving of the instruction; and (3) whether the substance of the instruction is covered by other instructions given. *Id.* A defendant is entitled to have the jury instructed correctly on an essential rule of law. *Davis v. State*, 691 N.E.2d 1285, 1289 (Ind.Ct.App.1998).

### A. Accomplice Liability Instruction

Nathan alleges that the accomplice liability instruction was erroneous because it omitted the mens rea required for an attempted murder conviction. As a result, Nathan argues that the instruction "focused on the law that a person could be convicted as an accomplice regardless of whether that person shared or possessed the intent to kill Thomas." The trial court instructed the jury on accomplice liability as follows:

A person who *knowingly or intentionally* aids, induces, or causes another person to commit an offense commits that offense, even if the other person:

(1) has not been prosecuted for the offense;

(2) has not been convicted of the offense; or

(3) has been acquitted of the offense.

The presence of the defendants at the time and place of a crime alleged to have been committed by the defendants' companions would not itself render the defendants guilty under this accessory principle of law. But presence of a person at the scene, companionship with other persons engaged in the offense, and a course of

---

6. The supreme court noted, "When the claimed error is the failure to *give* an instruction, as distinguished from the *giving of an erroneous one,* a tendered instruction is necessary to preserve error because, without the substance of an in- struction upon which to rule, the trial court has not been given a reasonable opportunity to consider and implement the request." *Scisney*, 701 N.E.2d at 848, n. 3 (emphasis in the original).

conduct before and after the offenses are circumstances which may be considered. If in the commission of an offense it is shown by the evidence beyond a reasonable doubt that the person present acted in union, any act of one person is attributable to all persons and a person is responsible for the acts of his companions as well as his own. *Each participant must knowingly or intentionally associate himself with the criminal venture, participate in it, and try to make it succeed.* Under these circumstances it is not essential that actual participation of each defendant in each element of the charge be established.

(Emphasis supplied.) Nathan incorrectly asserts that he could be convicted of attempted murder absent a specific intent to kill Thomas. The jury was informed that to be convicted of attempted murder as an accomplice, each participant must have knowingly or intentionally participated in the criminal venture and aided another in the commission of the offense. Moreover, the attempted murder instruction instructed the jury that the State had to prove that the Defendants acted with the intent to kill Thomas.[7] When the instructions are read together, the accomplice liability instruction did not mislead the jury on the law. *See Starks v. State,* 620 N.E.2d 747, 750–751 (Ind.Ct.App.1993) ("The manner of instructing the jury ... will not be disturbed unless an instruction error, when considered with all instructions as a whole and in reference to each other, is such that the charge misstates the law or otherwise misleads the jury to the law applicable to the case."). The trial court did not err in giving this instruction.

### B. Intent to Kill Instruction

■ Nathan also asserts that the intent-to-kill instruction was erroneous because it "highlight[ed] the nature of the injury instead of the actor's intention to cause a result." The trial court instructed the jury on intent to kill as follows:

The intent to kill may be inferred from the use of a deadly weapon used in a manner reasonably calculated to cause death and from the nature, duration, or brutality of the attack. An intention to kill may also be found from acts, declarations, and conduct of the defendants at or just immediately before the commission of the offense, and from noting the part of the body on which the wound was inflicted.

In *Barany v. State,* 658 N.E.2d 60 (Ind. 1995), the defendant challenged a similar jury instruction on the intent to kill. In holding that "this instruction is a correct statement of the law in Indiana[,]" our supreme court relied on *Nunn v. State,* 601 N.E.2d 334, 339 (Ind.1992), *opinion modified on other grounds on remand,* 695 N.E.2d 124 (Ind.Ct.App.1998), which concluded that

[a]n intent to kill sufficient to sustain a murder conviction can be established in several ways. The intent to kill may be inferred from the use of a deadly weapon. [*Jones v. State,* 523 N.E.2d 750, 752 (Ind. 1988); *Bryan v. State,* 450 N.E.2d 53, 63 (Ind.1983).] Intent may be inferred from the nature of the attack and the circumstances surrounding the crime. [*Corbin v. State,* 563 N.E.2d 86, 88 (Ind.1990).] The duration, brutality, and relative strengths of the defendant and victim may also indicate an intent to kill. [*Gibson v. State,* 515 N.E.2d 492, 496 (Ind.1987).]

*Barany,* 658 N.E.2d at 65. Because the jury instruction was a correct statement of the law, the trial court did not err in giving this instruction.

### III. Sufficiency of the Evidence

■ The sufficiency of evidence necessary to sustain a conviction is governed by a well-settled standard and scope of review. This Court neither reweighs the evidence nor determines the credibility of the witnesses. *Smith v. State,* 678 N.E.2d 1152, 1155 (Ind. Ct.App.1997), *trans. denied.* Instead, we

---

7. The attempted murder instruction provided, in pertinent part, that

 [t]o convict the defendants of attempted murder in Count I[,] the State must have proved each of the following elements:
 [T]he defendants

 1. acting with the intent to kill Johnny Thomas III
 2. engaged in conduct
 3. that constituted a substantial step toward that killing.
 (Emphasis supplied.)

look to the evidence most favorable to the verdict, together with all reasonable inferences to be drawn therefrom. *Id.* The conviction will be affirmed if evidence of probative value exists from which a trier of fact could find the defendant guilty beyond a reasonable doubt. *Taylor v. State,* 676 N.E.2d 1044, 1047 (Ind.1997).

 The State argued that Andre was criminally liable as an accessory because he acted in concert with Cohen and Nathan to batter and to kill Thomas. In order to prove that Andre was an accessory, the State had to establish that he aided Cohen and Nathan in battering and attempting to kill Thomas. Under an accomplice liability theory, the evidence need not show that the accomplice personally participated in the commission of each element of a particular offense; rather, " 'an accomplice is criminally responsible for all acts committed by a confederate which are a probable and natural consequence' " of their concerted action. *McGee v. State,* 699 N.E.2d 264, 265 (Ind.1998), quoting *Vance v. State,* 620 N.E.2d 687, 690 (Ind.1993). "A person who knowingly or intentionally aids, induces, or causes another to commit an offense commits that offense[.]" IND. CODE § 35–41–2–4; *Weyls v. State,* 598 N.E.2d 610, 614 (Ind.Ct.App.1992), *trans. denied.* Factors this Court must consider in determining whether a defendant aided another in the commission of a crime include the following: (1) presence at the scene of the crime; (2) companionship with another engaged in the criminal activity; (3) failure to oppose the commission of the crime; and (4) the course of conduct before, during, and after the occurrence of the crime. *Hodge v. State,* 688 N.E.2d 1246, 1248 (Ind.1997).

### A. Attempted Murder

 Andre contends that the evidence adduced at trial was insufficient to support his conviction for attempted murder. Specifically, Andre asserts that the State failed to present evidence that he aided Cohen and Nathan in attempting to murder Thomas. A conviction for murder, a felony, requires

proof that the defendant "knowingly or intentionally kill[ed] another human being[.]" IND. CODE § 35–42–1–1; *Hodge,* 688 N.E.2d at 1248. To establish an attempt, the State must prove that the defendant acted with the culpability required for commission of the crime, and that he engaged in conduct that constituted a substantial step toward the commission of the crime.[8] IND. CODE § 35–41–5–1(a); *Minter v. State,* 653 N.E.2d 1382, 1383 (Ind.1995). "In Indiana, the law of attempt focuses on the substantial step the defendant has completed, not on what was left undone." *Vaughn v. State,* 426 N.E.2d 113, 115 (Ind.Ct.App.1981).

A "substantial step" toward the commission of a crime, for purposes of the crime of attempt, is any overt act beyond mere preparation and in furtherance of intent to commit the offense. Whether a defendant has taken a substantial step toward the commission of the crime, so as to be guilty of attempt to commit that crime, is a question of fact to be decided by the jury based on the particular circumstances of the case. *Williams v. State,* 685 N.E.2d 730, 734–735 (Ind.Ct.App.1997), citing *Hughes v. State,* 600 N.E.2d 130, 131 (Ind.Ct.App.1992). Therefore, in order to sustain his conviction for attempted murder, this Court must find that the evidence demonstrates that Andre acted with the specific intent to kill and engaged in conduct constituting a substantial step toward the commission of murder. *See Hodge,* 688 N.E.2d at 1248; IND. CODE § 35–41–5–1.

 Here, the evidence clearly established that Andre acted with the culpability required for and engaged in conduct which constituted a substantial step toward the commission of attempted murder. As Thomas was pounding on the door of the gas station/mini mart, Andre jumped from the car, chased Thomas, grabbed his arm, pulled him to the side of the gas station, and held him down. Thomas was able to break free; however, Andre and Cohen chased him again and tackled him from behind. After a struggle, Andre then held one of Thomas's arms while Cohen held the other so that he could

---

8. "An attempt to commit a crime is a felony or misdemeanor of the same class as the crime attempted. However, an attempt to commit

murder is a Class A felony." IND. CODE § 35–41–5–1.

not escape, which enabled Nathan to shoot him in the head. While Andre did not actually shoot Thomas himself, he acted together with Nathan and Cohen to attack and attempt to kill Thomas. *See Taylor v. State*, 676 N.E.2d 1044, 1047 (Ind.1997) (a jury may find a defendant guilty of murder as an accomplice even if the defendant did not fire the fatal shot because an accomplice who acts in concert with another who actually commits the direct act is equally as liable as the principal); *Vance v. State*, 620 N.E.2d 687, 690 (Ind.1993) (intent to kill may be inferred from the accomplice's stabbing of three victims that could be imputed to the defendant to support his conviction for attempted murder because an accomplice is criminally responsible for all acts committed by a confederate). Therefore, the State presented sufficient evidence to support Andre's conviction for attempted murder.

### B. Battery

 Andre alleges that there was insufficient evidence as a matter of law to support his conviction for battery. A conviction for battery as a Class C felony requires proof that the defendant "knowingly or intentionally touch[ed] another person in a rude, insolent, or angry manner ... by means of a deadly weapon[.]" [9] IND. CODE § 35–42–2–1(a)(3); *Kuchel v. State*, 570 N.E.2d 910, 915 (Ind.1991). "When two or more confederates engage in the commission of an unlawful act, each is criminally liable for the acts of the other in furtherance of their common objective." *Elwood v. State*, 673 N.E.2d 1, 2 (Ind.Ct.App.1996); *see* IND. CODE § 35–41–2–4. Here, Andre jumped out of a vehicle, tackled Thomas, and pulled him to the side of the gas station. Although Thomas broke free, Andre and Cohen again tackled Thomas from behind, and they rolled. Thomas landed on his knees, and Andre grabbed one of Thomas's arms while Cohen held the other. Nathan then ran over and put the handgun to the back of Thomas's head and shot him. From this, the jury could reasonably infer that Andre committed battery as a Class C felony.

### C. Dubious and Inconsistent Testimony

 Andre also maintains that his convictions should be set aside because Thomas's testimony was "not credible and was of a dubious nature." Inconsistencies in a witness's testimony go to its weight and credibility, the resolution of which is the jury's province. *Taylor v. State*, 681 N.E.2d 1105, 1111 (Ind.1997). Under the incredible dubiosity rule, "[a] reviewing court will impinge on the jury's responsibility to judge the credibility of the witnesses only when it is confronted with inherently improbable testimony, or with coerced, equivocal, or wholly uncorroborated testimony of incredible dubiosity." *Moreland v. State*, 701 N.E.2d 288, 291 (Ind.Ct.App.1998); *see also Tillman v. State*, 642 N.E.2d 221, 223 (Ind.1994). " '[I]n essence, when faced with a claim of inherently improbable or incredibly dubious testimony, the court on review will reverse only when no reasonable person could believe it.' " *Taylor*, 681 N.E.2d at 1111, quoting *Davis v. State*, 658 N.E.2d 896, 897 (Ind.1995), *cert. denied*, 516 U.S. 1178, 116 S.Ct. 1275, 134 L.Ed.2d 221 (1996).

 Although Thomas gave conflicting testimony, the jury could have reasonably determined that Andre was guilty of attempted murder and battery. The jury was fully apprised of Thomas's inconsistencies about the number of times he was shot and his statements to the police. The Defendants' counselors spent considerable time questioning Thomas on the inconsistencies between his trial testimony and his original statements to the authorities. It is the responsibility of the jury to resolve any inconsistencies in a witness's testimony and to decide what to believe and disbelieve. *See Moreland*, 701 N.E.2d at 291. Thomas testified in detail concerning the events leading up to the shooting. Thomas also informed Officer Eller that Andre was one of the

---

9. " 'Deadly weapon' means the following: (1) a loaded or unloaded firearm (2) a weapon, device, taser or electronic stun weapon, equipment, chemical substance, or other material that in the manner it is used, or could ordinarily be used, or is intended to be used, is readily capable of causing serious bodily injury." IND. CODE § 35–41–1–8; *Timm v. State*, 644 N.E.2d 1235, 1238 (Ind.1994).

Defendants involved in the shooting. Moreover, he identified Andre several weeks after being shot and in court. *See Thompson v. State,* 612 N.E.2d 1094, 1098 (Ind.Ct.App. 1993), *trans. denied* (the uncorroborated testimony of a victim is sufficient to support a conviction despite inconsistent prior assertions). Therefore, the evidence was sufficient to support the jury's verdict.[10]

### IV. Conviction and Sentence for both Attempted Murder and Battery

 We address a fifth issue *sua sponte.* Nathan, Cohen, and Andre were convicted of both attempted murder and battery. Although the trial court entered judgments of conviction upon both offenses, it merged the battery convictions with the greater offenses, sentencing the Defendants only on the attempted murder count. A defendant may be *charged and tried* with greater and lesser included offenses under the same indictment or information. *Redman v. State,* 679 N.E.2d 927, 929 (Ind.Ct.App.1997), *trans. denied* (emphasis added). Because a trial court often enters judgments of conviction upon both the lesser included and greater offenses, it will either sentence a defendant upon only one of the offenses or "merge" the two convictions.[11] *Id.*

 However, a defendant may not be *convicted and sentenced* upon the lesser included offense when a sentence is also imposed upon the greater offense. *Mason v. State,* 532 N.E.2d 1169, 1172 (Ind.1989), *cert. denied,* 490 U.S. 1049, 109 S.Ct. 1960, 104 L.Ed.2d 428 (emphasis supplied). "Where the conviction of a greater crime cannot be had without conviction of the lesser crime, the double jeopardy clause bars separate conviction and sentencing on the lesser crime when sentencing is imposed on the greater one." *Id.* Therefore, where a defendant is found guilty of both the greater offense and the lesser included offense, the trial court's proper procedure is to vacate the conviction for the lesser included offense and enter a judgment of conviction and sentence only upon the greater offense.[12] *Id.*

 *Mason* dealt with convictions and sentences for both lesser included and greater offenses that were merged with the greater offense. *Id.* at 1171. Here, however, while convicting the Defendants for both offenses, the trial court did not enter sentences upon the lesser included count, but sentenced them only upon the greater count. This Court addressed the issue of whether a defendant may be convicted of a lesser included offense that is merged with the conviction

10. Finally, Andre complains that the evidence was insufficient to support his convictions because Thomas had been convicted of several felonies of dishonesty (forgery and robbery). Andre's argument implicitly asks that we discount the testimony of the State's witness because of his previous felony convictions. However, the weight to be given to these prior convictions is a question of credibility for the jury to consider. *See Lee v. State,* 529 N.E.2d 341, 342 (Ind.1988). It is not for this Court to invade the province of the jury by reweighing the evidence and reevaluating the credibility of the witnesses. *See Fields v. State,* 679 N.E.2d 898, 900 (Ind.1997). Andre's argument essentially invites us to reweigh the evidence and reevaluate Thomas's credibility, which we will not and cannot do. *See Smith,* 678 N.E.2d at 1155. The jury, as trier of fact, heard the evidence and determined that Andre aided Cohen and Nathan in battering and attempting to kill Thomas.

11. "The term 'merger' is often used to describe the determination to forego sentencing with regard to an included offense in light of a conviction upon a greater offense. It may also be used to indicate that one conviction must be vacated

as subsumed within another conviction. However, use of a 'merger' solution in a particular instance may not avoid double jeopardy prohibitions." *Redman,* 679 N.E.2d at 929, n. 2.

12. We recognize that trial judges are often reticent to vacate a conviction even when they know there might be a double jeopardy issue. This Court has in fact acknowledged this understanding in *Redman v. State,* 679 N.E.2d 927 (Ind.Ct. App.1997).

We acknowledge that a trial court might understandably prefer not to vacate a conviction of a lesser offense in light of a conviction on the greater offense if there is any likelihood of an appellate reversal of the greater conviction. If, in such instance, there was no conviction of record on the lesser offense, quite obviously such conviction could not be affirmed. While the appellate forum, in reversing the greater conviction, might remand, giving authority to the trial court to enter a conviction upon the lesser offense, trial courts are not required to be so clairvoyant as to anticipate that prospect. *Id.* at 929, quoting *Abron v. State,* 591 N.E.2d 634, 637 (Ind.Ct.App.1992), *trans. denied.*

and sentence of the greater offense in *Redman v. State*, 679 N.E.2d 927, 932. In *Redman*, the defendant was convicted of both aggravated battery and attempted murder; however, the trial court merged the aggravated battery count with the attempted murder count and imposed a sentence only for the attempted murder count. *Id.* at 927. We held that merging the two offenses was inappropriate and ordered the trial court on remand to vacate the conviction upon the lesser included offense of aggravated battery. *Id.* at 932.

■ As defined by statute, battery by means of a deadly weapon is not an inherently lesser included offense of attempted murder because each requires proof of an element that the other does not. *Stringer v. State*, 690 N.E.2d 788, 790 (Ind.Ct.App.1998), *trans. denied; see also Wilson v. State*, 697 N.E.2d 466, 476 (Ind.1998); *Porter v. State*, 671 N.E.2d 152, 154 (Ind.Ct.App.1996), *trans. denied; Leon v. State*, 525 N.E.2d 331, 332 (Ind.1988).[13] Although touching is an essential element of battery, it is not required to obtain a conviction for attempted murder because it is possible to commit attempted murder without touching the intended victim. *Stringer*, 690 N.E.2d at 790.

However, Indiana courts have long recognized that there are two categories of lesser included offenses. *Meriweather v. State*, 659 N.E.2d 133, 138 (Ind.Ct.App.1995), *trans. denied* (1996); *see also Jones v. State*, 438 N.E.2d 972, 974–975 (Ind.1982); IND. CODE § 35–41–1–16.[14]

The first category entails those offenses which are inherently included in a greater offense. An inherently lesser included offense is one which a person necessarily commits in the course of committing the greater offense. An inherently lesser included offense exists when, by virtue of the legal definitions of the two offenses, it is impossible to commit the greater offense without first committing the lesser or when a lesser degree of culpability is required for the lesser offense.[ ][15]

The second category of lesser included offenses is comprised of those offenses which are "included as charged."[16] In *Maynard v. State*, [490 N.E.2d 762, 763 (Ind.1986) ], Justice Dickson described "included as charged" offenses as those which are " 'committed by reason of the manner in which the greater offense was committed,' if within the factual allegations contained in the charging instrument."[ ] Thus even if it is possible for a defendant to commit the charged crime without necessarily committing the lesser crime, the State may properly convict the defendant of the lesser crime if the facts as alleged in the charging instrument correlate with the elements of the lesser offense. For example, *battery may be a lesser included offense to an attempted murder charge if the information alleges a factual physical transgression against the victim so as to satisfy the "touching" element of battery.*[ ]

*Meriweather*, 659 N.E.2d at 138–139 (emphasis supplied).

Here, the charging information alleged that the Defendants intentionally shot at and wounded Thomas with a deadly weapon, to wit: a handgun. The elements of battery as a Class C felony are knowingly or intentionally touching a person in a person in a rude,

---

13. We acknowledge that the case law upon which this Court relies for the included offense analysis addresses whether a trial court erred in giving or refusing to give a defendant's tendered instruction upon a lesser included offense. However, these cases are used to show that battery as a Class C felony is a factually lesser included offense of attempted murder.

14. IND. CODE § 35–41–1–16 defines an "included [offense]" as an offense that:
(1) is established by proof of the same material elements or less than all the material elements required to establish the commission of the offense charged;
(2) consists of an attempt to commit the offense charged or an offense otherwise included therein; or
(3) differs from the offense charged only in the respect that a less serious harm or risk of harm to the same person, property, or public interest, or a lesser kind of culpability, is required to establish its commission.

15. We will hereinafter indicate the omission of citations as "[ ]" for purposes of legibility.

16. Offenses "included as charged" are also referred to as "factually" or "possibly included offenses."

insolent, or angry manner by the use of a deadly weapon. IND. CODE § 35–42–4–1(a)(3). When we compare the statute defining battery with a deadly weapon with the charging information, it is apparent that the information states that the means used to commit the attempted murder also include the elements of battery. *See, e.g., Johnson v. State,* 464 N.E.2d 1309, 1310–1311 (Ind. 1984) (elements of battery alleged in the information charging attempted murder where the element of engaging in a substantial step toward murder alleged a touching). Therefore, the battery charge is a *factually* lesser included offense of the attempted murder charge. The trial court's decision to merge the battery conviction with the attempted murder conviction was inappropriate because of double jeopardy. *See Boze v. State,* 514 N.E.2d 275, 277 (Ind.1987) (because battery was a lesser included offense of attempted murder, the defendant could not be convicted and sentenced on both attempted murder and battery under double jeopardy). Therefore, we remand this cause to the trial court with an order to vacate the Defendants' convictions of the lesser included offense of battery and enter judgments of conviction and sentences only upon the greater offense of attempted murder.

### Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed in part with respect the issues of the sufficiency of the evidence, the admission of the photographic lineups, and the jury instructions. The convictions upon the battery and attempted murder charges are affirmed. However, we also reverse the trial court's judgment in part and remand this cause with instructions to vacate the Defendants' convictions for battery.

Affirmed in part, reversed in part, and remanded with instructions

BAKER and RUCKER, JJ., concur.