Brian **RINGHAM**, Appellant– Defendant,

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 49A02–0009–CR–577.**

Court of Appeals of Indiana.

July 23, 2001.

Rehearing Denied September 10, 2001.

Robert W. Hammerle, Joseph M. Cleary, Hammerle Foster Allen & Long–Sharp, Indianapolis, IN, Attorneys For Appellant.

Steve Carter, Attorney General of Indiana, Timothy W. Beam, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### *STATEMENT OF THE CASE*

Appellant–Defendant, Brian Ringham (Ringham), appeals his conviction of rape, as a Class A felony, Ind.Code § 35–42–4–1.

We reverse and remand.

### *ISSUES*

Ringham raises three issues on appeal, which we restate as follows:

1. Whether the court commissioner, Alex R. Murphy, properly presided over his preliminary hearing and trial.

2. Whether the trial court improperly admitted the victim's prior consistent statement.

3. Whether the trial court committed fundamental error when it failed to instruct the jury that the State had the burden of disproving Ringham's mistake of fact defense.

### *FACTS AND PROCEDURAL HISTORY*

C.C., the victim, was employed as a waitress at a new Hooters restaurant in downtown Indianapolis, Indiana. On January 26, 1999, there was a grand opening party at Hooters. C.C. worked at the party. Following the party, C.C. and some

co-workers were invited to a party at the Have a Nice Day Café (Café).

At the Café, C.C. was introduced to Ringham. Ringham worked at the Café, but was not on duty that evening. C.C. and Ringham talked and danced. Ringham drank beer and C.C. drank from a "Happy Bowl," which is a fish bowl type of container filled with Kool Aid and Everclear.

At some point, C.C. noticed that there were upper-levels to the Café. She asked Ringham about them, and he offered to take her on a tour. Ringham spoke to a manager and then escorted C.C. upstairs. The two went to the fourth floor, which was dark and illuminated only by the outside streetlights.

Ringham and C.C. began to kiss. Initially, C.C. did not object. However, when Ringham tried to raise her skirt up with his hand, C.C. testified that she stopped kissing him, pushed his hand down, and told him to stop. C.C. also testified that she told Ringham that she was ready to go back downstairs. He would not let her go. C.C. testified that Ringham stepped closer to her, lifted her up, and put her on some type of workbench.

C.C. pushed herself off of the workbench and attempted to back away from Ringham. While she was backing away, C.C. tripped and fell over a roll of carpet. Ringham ended up on top of her. According to C.C., she asked Ringham, "[s]o, what, you want to be a rapist?" (R. 263). Ringham's advances did not stop. Ringham partially ripped C.C.'s underwear and started to fondle her. C.C. testified that she loudly told him to stop. Ringham told C.C. that if she did not quiet down, he would break her neck. Ringham then inserted his penis into her vagina.

C.C. began to shiver, and Ringham removed himself from her. C.C. slid her torn underwear off of her leg and kept them in her hand. The two then went downstairs. Ringham went back to the bar, and C.C. left the Café and drove to St. Francis Hospital in Greenwood, Indiana.

At the hospital, C.C. saw a police officer and told him that she had just been raped. Eventually, a nurse was called to examine C.C. The nurse noted that C.C.'s vagina had an abrasion and a laceration.

Detective Lawrence Cahill (Cahill) from the Indianapolis Police Department was called, and he drove to St. Francis Hospital and spoke with C.C. The following evening, Cahill went to the Café and found Ringham. Ringham voluntarily gave a statement. He admitted to having sex with C.C. However, he told Cahill that he and C.C. engaged in consensual sexual intercourse.

The State subsequently charged Ringham with one count of rape, as a Class A felony. This case was assigned to the Marion County Superior Court, Criminal Division, Room 1. The judge of that court is the Honorable Tanya Walton Pratt.

Ringham's trial was set for April 17, 2000. Prior to the commencement of trial, on the morning of April 17, 2000, Judge Pratt heard some preliminary matters. The principal issue that morning concerned whether or not any testing had been done on C.C.'s urine sample. Judge Pratt recessed the proceedings to allow Detective Cahill to make some phone calls regarding the urine sample. When the proceedings resumed, Judge Pratt was no longer on the bench; instead, the court's commissioner, Alex R. Murphy, was sitting in her place. Commissioner Murphy explained that:

> as commissioner I was in the courtroom when you were making your argument relative to your discovery questions and as you may not know Judge Pratt is attending this morning briefly for ad-

ministrative duties relative to next week's death-penalty case but is unavailable for the balance of the day which necessitates the Court's commissioner hearing the proceedings. My understanding was that the State was doing some calling as to the toxicology possibilities of some body fluids?

(R. 183).

At that point, Ringham's attorney objected, stating:

Your Honor, before we get into that, if I may, just as a procedural matter. I have spoken with my client about yourself sitting as commissioner in this case and he's indicated to me that Your Honor has sat on some other previous issues in this cause and that he feels that he has not been treated fairly and with proper consideration by yourself, Judge, and he asks that the regular sitting judge be the individual to hear the case.

(R. 183–184).

Commissioner Murphy responded as follows:

Well if you'd explain to Mr. Ringham that the commissioner does serve as the judicial officer when the elected Judge is unavailable which is the case today. The record should reflect that I did discuss bond issues or preside over a bond hearing on February the 15th with Mr. Ringham. I can only presume that's the context Mr. Ringham references and absent any showing of any other, I suppose he's alleging preexisting prejudice which to my knowledge, beyond the bond hearing, I don't know how it could be shown but the fact that the Judge is unavailable comports with the necessary appointment prerequisites, as it goes, the fact that it would be a jury trial, I think we're all three familiar that it pretty much lessens the judicial officer's impact or involvement in the hearing. I understand Mr. Ring-

ham's concern, this is a serious allegation but given the state of affairs which you present there is no legal basis for the appointed commissioner to not hear the case in absence or the unavailability of the elected Judge.

(R. 184–185).

Ringham's attorney replied: "I understand, Your Honor, we just simply want to make a record that he does request the regular judge...." (R. 185).

Commissioner Murphy remained as sitting judge. He proceeded with the preliminary hearing, made rulings, and the jury trial commenced. The jury trial ended on April 18, 2000. The jury found Ringham guilty of rape, as a Class A felony.

On May 23, 2000, Ringham was sentenced by Commissioner Murphy as follows:

The law requires the presumptive sentence of thirty years based upon this Class A felony. Based upon the mitigators that I cited the Court suspends ten of the thirty years and places you on probation for five years.

(R. 771).

Ringham filed his praecipe on June 15, 2000. On March 9, 2001, this court suspended consideration of Ringham's appeal for a period of 20 days. This cause was remanded to the Marion Superior Court, Criminal Division, Room 1; and Ringham was granted leave to file a motion concerning the appointment of a judge pro tempore on the days he was tried and more particularly, whether the judge pro tempore was properly appointed and whether such appointment was properly documented on the clerk's record at that time. Additionally, this court ordered the trial court to hold a hearing if it deemed that a hearing was necessary.

On March 27, 2001, pursuant to this court's March 9, 2001 Order, an evidentiary hearing was held in the Marion County Superior Court, Criminal Division, Room 1. Judge Pratt presided over these matters. On March 29, 2001, Judge Pratt issued her Order on Findings of Fact. She found as follows:

> that documents showing that Commissioner Murphy was validly appointed as Judge Pro Tempore on April 17 and 18, 2000, are contained in the Marion County Clerk's Order Book and were introduced as Exhibits A through D. None of these documents were file marked and no explanation was offered as to why they were not file marked. Furthermore, the Chronological Case Summary does not reflect that Commissioner Murphy was appointed as Judge Pro Tempore on April 17, 2000. The Chronological Case Summary for April 18, 2000 however, does reflect that Commissioner Murphy presided over the jury trial.
>
> * * *
>
> Because the pro tempore papers were erroneously omitted from defendant's record of proceedings, this Court certifies that the pro tempore papers were properly executed and were intended to be in the defendant's record of proceedings.

(R. D–E).

On April 5, 2001, this court resumed consideration of this appeal.

### DISCUSSION AND DECISION

#### I. *Commissioner Murphy*

Ringham argues that Commissioner Murphy was not properly appointed as judge pro tempore, and as such, did not properly preside over his preliminary hearing and trial. We agree.

■ Ind. Const. art. 7, § 1 requires that judicial acts be performed only by judges. *Floyd v. State*, 650 N.E.2d 28, 29 (Ind.1994). Therefore, only a duly elected or appointed judge of the court or a duly appointed judge pro tempore or special judge may enter an appealable final judgment, including a criminal sentence. *Id.* at 30. "When a court official who is not a duly elected or appointed judge of the court purports to make a final order or judgment, that decision is a nullity." *Id.* *(But see* Ind.Code § 33–5.1–2–11(e) and Ind.Code § 33–4–7–4).

Ind.Trial Rule 63(E) provides:

> Judge pro tempore when judge is unable to attend. A judge who is unable to attend and preside at his court for any cause may appoint in writing a judge pro tempore to conduct the business of this court during his absence. The written appointment shall be entered in the records of the court. When duly sworn, or without being sworn if he is a judge of a court of this state, the judge pro tempore shall have the same authority during the period of his appointment as the judge he replaces. A judge appointed under this provision must meet the qualifications prescribed in subdivision (C) of this rule . . . .

■ When Commissioner Murphy sat in place of Judge Pratt at the preliminary hearing, he stated that he was sitting as commissioner and would be presiding over Ringham's case. Ringham objected to Commissioner Murphy sitting as commissioner and requested that the regular sitting judge be the individual to hear his case. Commissioner Murphy, at no time, indicated that he was appointed as judge pro tempore. He only indicated that he was sitting as the commissioner.

Granted, there are instances in the Record indicating that Commissioner Murphy was judge pro tempore. For example, the "Transcript of Evidence" prepared and

certified by Diana Jester, the Official Reporter of the Superior Court of Marion County, Criminal Division, Room 1, states that Commissioner Murphy was judge pro tempore. (R. 178–181, 712). Additionally, the Judge's Certificate, certifying the "Transcript of Evidence," was signed by Commissioner Murphy as judge pro tempore. (R. 714–715). However, we must note that these documents are prepared after trial.

In the case chronology, it shows that on April 17, 2000, Judge Pratt was the sitting judge. It is not until April 18, 2000, the second day of trial, that the case chronology shows Commissioner Murphy as judge pro tempore.

In the supplemental record, there are documents named "Appointment of Attorney as Judge Pro Tempore." These documents indicate that Commissioner Murphy was acting as judge pro tempore on April 17, 2000, and on April 18, 2000. However, these documents are not filed stamped.

Moreover, at the evidentiary hearing held on March 27, 2001, Darnise Woods (Woods), the Deputy Clerk of the Marion County Clerk's Office, testified that based on her training and practice, judge pro tempore appointments were notarized on the Friday at the end of every week. Woods further testified that it was her pattern and practice to backdate the date of the notarization to reflect the date that has been already typed in on the "Appointment of Attorney as Judge Pro Tempore" document.

April 17, 2000, fell on a Monday; and April 18, 2000, fell on a Tuesday. If these practices and procedures that Woods spoke of were followed in Ringham's case, the "Appointment of Attorney as Judge Pro Tempore" documents were not notarized until a few days after Commissioner Murphy was allegedly appointed as judge pro tempore. Granted, Woods was not the trial court clerk at the time of Ringham's trial; and, thus, she could not testify whether the "Appointment of Attorney as Judge Pro Tempore" documents regarding Commissioner Murphy were actually executed on the days that they are dated, i.e. April 17, 2000 and April 18, 2000. Nonetheless, the State presented no evidence showing that the "Appointment of Attorney as Judge Pro Tempore" documents were contemporaneously prepared with Ringham's trial.

It is true that the trial court, in its Order on Findings of Fact, certified that the pro tempore papers were properly executed. However, we cannot agree. With Commissioner Murphy stating that he was sitting as commissioner, the lack of an entry in the case chronology on April 17, 2000, demonstrating that Commissioner Murphy was sitting as judge pro tempore, the fact that the "Appointment of Attorney as Judge Pro Tempore" documents were not file stamped, and Woods' testimony of the practices and procedures for notarizing judge pro tempore appointments, we come to the conclusion that Commissioner Murphy was not properly appointed as judge pro tempore, at the very least, on April 17, 2000. Consequently, we find that on April 17, 2000, Commissioner Murphy was exactly what he held himself out as, the court's commissioner.

Ind.Code § 33–5.1–2–11(e) provides:

A master commissioner appointed by the court under this section has the powers and duties prescribed for a magistrate under IC 33–4–7–4 through IC 33–4–7–8. A master commissioner shall report the findings in each of the matters before the master commissioner in writing to the judge or judges of the division to which the master commissioner is assigned or as designated by rules of the court.

Ind.Code § 33–4–7–4 states that:

A magistrate may do any of the following:

* * *

(10) Conduct a preliminary, initial, omnibus, or other pretrial hearing.

(11) Conduct an evidentiary hearing or trial.

(12) Receive a jury's verdict.

(13) Verify a certificate for the authentication of records of a proceeding conducted by the magistrate.

(14) Enter a final order, conduct a sentencing hearing, and impose a sentence on a person convicted of a criminal offense as described under section 8 of this chapter.

It appears as if Commissioner Murphy, having the same power prescribed for a magistrate, was properly presiding over Ringham's preliminary hearing and trial. However, Ind.Code § 33–5.1–2–27(d) provides:

A party to a superior court proceeding that has been assigned to a magistrate appointed under this section may request that an elected judge of the superior court preside over the proceeding instead of the magistrate to whom the proceeding has been assigned. Upon a request made under this subsection by either party, the magistrate to whom the proceeding has been assigned shall transfer the proceeding back to the superior court judge.

As previously stated, when Commissioner Murphy sat in place of Judge Pratt, Ringham immediately objected and requested that Judge Pratt hear his case. In response, Commissioner Murphy incorrectly stated that "there is no legal basis for the appointed commissioner to not hear the case in absence or the unavailability of the elected Judge." (R. 184–185). Ind. Code § 33–5.1–2–27(d) could not be more clear. When Ringham requested that Judge Pratt, the regular sitting judge, preside over his case, it was Commissioner Murphy's duty to transfer the proceeding back to Judge Pratt. This is not a discretionary matter.

Based on the foregoing, we conclude that Commissioner Murphy improperly presided over Ringham's preliminary hearing and trial. As such, we must reverse Ringham's conviction and remand this matter for a new trial.

Although we find the above issue to be dispositive, we will discuss Ringham's other two issues for the purposes of guidance in the event that these issues arise again at Ringham's new trial.

## II. *Prior Consistent Statement*

Ringham argues that the trial court erred when it allowed a prior consistent statement of C.C. into evidence. We disagree.

■ During the cross-examination of Detective Cahill, Ringham's counsel asked questions regarding the probable cause affidavit. Specifically, defense counsel cross-examined Cahill regarding C.C.'s statements to him that Ringham had pulled her back into the room as opposed to blocking her exit. After Cahill left the witness stand, the trial judge excused the jurors, and the State argued that it should be allowed to recall C.C.

It was the State's position that during the cross-examination of Cahill, Ringham's counsel opened up the idea that there may have been some fabrication by C.C. when she was on the witness stand. The State requested that it be allowed to introduce her prior statement to the police. Ringham's counsel responded by stating that C.C.'s statement to the police was available for introduction and discussion while she was on the witness stand previously. Commissioner Murphy determined that C.C.'s prior statement to the police was

admissible, and explained to the jury as follows:

> Before we broke, the State was making the record that they believe that the cross examination of the officer amounted to a[sic] expressed or implied charge of recent fabrication and I'm reading from the 801 Rule for clarity of the record and I don't know if you agree, Mr. Furnas [Ringham's counsel], with that proposition. I tend to believe that confronting the officer with a possible inconsistency in the affidavit based upon his investigation with the witness is an express or implied charge of fabrication which I made the record, made the point off the record, then that would allow the State to bring in the prior consistent statement as an effort to rebut that expressed or implied charge of fabrication....So what I have now is, the ruling that based upon 801(d) the State would be allowed to rebut the inference of fabrication with the prior unsworn consistent statement.

(R. 556–557).

Subsequently, Detective Cahill, rather than C.C., was called back to the witness stand to establish the foundation for the admission of C.C.'s prior statement. The State then offered into evidence C.C.'s recorded interview with Cahill. Ringham objected to its admission on the basis that it was an out-of-court hearsay statement of a party. The statement was admitted over Ringham's objection.

Ind.Evidence Rule 801(d)(1) provides:

(d) Statements Which are Not Hearsay. A statement is not hearsay if:

(1) Prior statement by witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with the declarant's testimony and was given under oath subject to the penalty of perjury at a trial, hearing or other proceeding, or in a deposition; or (B) consistent with the declarant's testimony, offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive, and made before the motive to fabricate arose; or (C) one of identification of a person made shortly after perceiving the person;....

■ Although the predicate requirement set forth in Evid.R. 801(d)(1) mandates that the declarant testify at trial and be "subject to cross-examination concerning the statement," if the declarant has not already been cross-examined on the statement, her availability to be recalled for cross-examination satisfies this requirement. *Goodner v. State*, 714 N.E.2d 638, 643 (Ind.1999). Furthermore, we review trial court rulings on the admissibility of arguably hearsay statements for abuse of discretion. *Sturgeon v. State*, 719 N.E.2d 1173, 1177 (Ind.1999).

In his cross-examination of Detective Cahill, Ringham's counsel implied that C.C. had given inconsistent statements regarding the events that took place on January 26, 1999. The State then offered, and Commissioner Murphy allowed over Ringham's objection, evidence of a prior consistent statement to rebut Ringham's implied charge of recent fabrication. *See* Evid.R. 801(d)(1). After the statement was admitted, Ringham could have recalled C.C. and further questioned her regarding the statement because the State did not release her from its subpoena. *See Goodner*, 714 N.E.2d at 643. Consequently, we cannot find that there was an abuse of discretion in allowing C.C.'s prior consistent statement. *See Sturgeon*, 719 N.E.2d at 1177.

### III. *Jury Instruction*

Finally, Ringham argues that Commissioner Murphy committed fundamental error when it failed to instruct the jury that the State had the burden of disproving Ringham's mistake of fact defense. We agree.

Ringham tendered a mistake of fact jury instruction. Commissioner Murphy modified Ringham's instruction and gave the following instruction on mistake of fact:

> It is a defense that the person who engaged in the prohibited conduct was reasonably mistaken about a matter of fact if the mistake negates the culpability required for the commission of the offense

(R. 122).

In *Nordstrom v. State,* 627 N.E.2d 1380, 1383 (Ind.Ct.App.1994), *trans. denied,* this court held that the State retains the ultimate burden of disproving a mistake of fact defense beyond a reasonable doubt. Neither Ringham's tendered instruction nor the trial court's instruction informed the jury of the State's burden of disproving this defense beyond a reasonable doubt. Consequently, Ringham maintains that the trial court's failure to correctly instruct the jury on this critical element constitutes fundamental error.

In *Smith v. State,* 730 N.E.2d 705, 706–707 (Ind.2000), *reh'g denied,* our supreme court held:

> A trial court's decision to instruct the jury is within its sound discretion, and we review that decision for an abuse of discretion. We consider: (1) whether the refused instruction correctly stated the law; (2) whether evidence supported giving the instruction; and (3) whether it was adequately covered by other instructions.

*Id.* (citations omitted).

■ Moreover, a defendant who fails to object to a jury instruction at trial waives any challenge to that instruction on appeal, unless giving the instruction was fundamental error. *Wright v. State,* 730 N.E.2d 713, 716 (Ind.2000). "Error is fundamental if it is 'a substantial blatant violation of basic principles' and where, if not corrected, it would deny a defendant fundamental due process." *Id.*

■ The State acknowledges that it maintains the burden of disproving the mistake of fact defense beyond a reasonable doubt. However, the State argues that Ringham failed to include this provision in his tendered jury instruction and failed to object to the trial court's jury instruction on mistake of fact. Therefore, the State insists that Ringham has waived any challenge to the instruction. In the alternative, the State contends that the trial court's failure to specifically instruct the jury in this regard does not constitute fundamental error in light of the other jury instructions.

Instruction Number 12 stated as follows:

> Under the law of this State, a person charged with a crime is presumed to be innocent. To overcome the presumption of innocence, the State must prove the defendant guilty of each essential element of the crimes charged, beyond a reasonable doubt.
>
> The defendant is not required to present any evidence to prove his innocence or to prove or explain anything.

(R. 91). Additionally, the trial court repeatedly instructed the jury on the elements of the crime and required the jury to find that the State had proved each of the elements beyond a reasonable doubt.

While it is true that the trial court instructed the jury on the elements of the crime and required the jury to find that the State had proved each of elements beyond a reasonable doubt, we cannot find

that these instructions adequately instructed the jury that the State maintains the burden of disproving the mistake of fact defense beyond a reasonable doubt. *See Smith*, 730 N.E.2d at 707. Instruction Number 12 only discusses proof beyond a reasonable doubt as it relates to each essential element of the crimes charged. It does not, in any way, cover a defense, or the State's burden of disproving it. Without such an instruction, the jury was free to believe that the State had no burden. Consequently, we find that the trial court committed fundamental error when it failed to instruct the jury that the State had the burden of disproving Ringham's mistake of fact defense. *See Wright*, 730 N.E.2d at 716.

### CONCLUSION

Based on the foregoing, we conclude that the trial court improperly convicted Ringham of rape, as a Class A felony, Ind. § 35–42–4–1.

Reversed and Remanded.

SULLIVAN, J., and FRIEDLANDER, J., concur.