Craig E. **CAPEHART**, Appellant,

v.

Lynn Dee Barker **CAPEHART**, Appellee.

No. 49A04–0106–CV–281.

Court of Appeals of Indiana.

July 3, 2002.

---

Linda J. Cooley, Joshua D. Hague, Krieg DeVault LLP, Indianapolis, IN, Attorneys for Appellant.

Deborah M. Agard, Gaddy & Gaddy, Indianapolis, IN, Attorney for Appellee.

## OPINION

FRIEDLANDER, Judge.

Craig E. Capehart appeals from an order granting a petition for contempt, for modification of visitation, and for attorney fees filed by his ex-wife Lynn Dee Barker Capehart. While he presents three issues for review, we find the following issue dispositive: Did the court commissioner err in denying Craig's request, which was made pursuant to Ind.Code Ann. § 33–5.1–2–27 (West 1996), that the elected judge preside over the proceedings? [1]

We reverse and remand for a new hearing.

The parties were married on December 29, 1988 and the marriage was dissolved by a dissolution decree on December 2, 1997. Lynn was awarded legal and physical custody of the parties' only child, K.A.C.[2] The trial court granted Craig visitation consistent with the Marion County Visitation Guidelines.

Since the dissolution, the parties have been embroiled in continuous litigation.

---

1. Craig also challenges the trial court's finding of child endangerment or impaired emotional development and the subsequent award of attorney fees to Lynn. Because we reverse and remand this matter for a new hearing, we need not reach these issues.

2. K.A.C. was born on June 26, 1989.

We observe that this is Craig's third appeal in this case. Craig first appealed several aspects of the dissolution decree, including child support. We affirmed the trial court in all matters except one in which we found harmless error. *See Capehart v. Capehart,* 705 N.E.2d 533 (Ind.Ct. App.1999), *trans. denied.* In his second appeal, we affirmed the trial court's order requiring Craig to execute consent forms to release information regarding stock that he had failed to timely transfer to Lynn pursuant to the dissolution decree. We also affirmed the trial court's award of appellate attorney fees to Lynn, which arose out of the previous appeal, noting that the trial court's determination was "no doubt influenced by Appellant's persistent instigation and perpetuation of legal proceedings, the effect of which has been to delay his compliance with certain obligations arising under the dissolution decree." *Capehart v. Capehart,* No. 49A02–0009–CV–578, slip op. at 10, 751 N.E.2d 352 (July 16, 2001), *trans. denied.*[3]

The instant appeal concerns the judgment entered on the Petition for Modification of Dissolution Decree and Petition for Contempt Citation filed by Lynn on June 1, 2000. The petition provided in part:

4. Following the entry of the parties' Decree, this Court entered an order on June 11, 1999, that denied Respondent's request for a temporary order; such order permitted the Petitioner to take [K.A.C.] to summer camp under the following conditions: (a) that the child was in the company of the Petitioner or (b) if the child is to attend camp, Petitioner was to remain within close proximity to the camp (i.e., within a 15–20 minute drive). Petitioner failed and refused to comply with said Order by sending the child to camp at issue without remaining in the close proximity as required by this Court.

5. According to the Marion County Visitation Guidelines, Section IV, General Principles, holiday visitation supersedes routine visitation; Respondent's holidays granted to her under the Guideline are frequently forfeited as a result of Petitioner's demand to exercise his routine visitation. Respondent has attempted to resolve this situation informally since the time of the Decree; however, Petitioner fails and refuses to observe that general principle of visitation. Respondent respectfully requests that this Court specifically instruct and order the Petitioner to abide by such general principle.

6. Due to substantial and continuing changes in circumstances, and in the minor child's best interests, Respondent respectfully requests that this Court order the Petitioner to notify Respondent of the location and telephone number of where he is exercising out-of-state visitation with the minor child; Respondent further requests that this Court specifically order Petitioner to notify the Respondent, at least two (2) weeks in advance, of any visitation he intends to exercise outside of the contiguous 48 States, and that he be specifically ordered to provide Respondent with an itinerary, including telephone numbers, of his anticipated travel with the minor child.

7. Due to substantial and continuing changes in circumstances, and in the minor child's best interests, Respon-

---

**3.** We note that Craig unsuccessfully sought rehearing in this court and then transfer to the supreme court in each appeal.

dent respectfully requests that this Court modify the Petitioner's visitation to reflect that he is not to leave the child unattended in hotel rooms when traveling within the United States and abroad.

8. Due to substantial and continuing changes in circumstances, Respondent respectfully requests that this Court modify Petitioner's week night visitation.

9. Due to substantial and continuing changes in circumstances, Respondent respectfully requests that summer visitation be a set scheduled (sic) every year with the Respondent having the minor child for the first part of summer visitation and the Petitioner having the minor child for the second part of summer visitation in the even numbered calendar years, and the Respondent having the minor child the second part of summer visitation with the Petitioner having the minor child the first part of summer visitation in the odd numbered calendar years.

. . . .

*Appellant's Appendix* at 45–47. Lynn also requested an award of attorney fees.

On March 2, 2001, the same day the evidentiary hearing on Lynn's petition was scheduled to proceed, Craig filed a request for transfer of the matter to the elected judge of the superior court in accordance with Ind.Code Ann. § 33–5.1-2-27 (West 1996). Upon learning of the written motion, which was also the subject of an oral motion made by Craig's attorney in open court, Master Commissioner Christopher B. Haile took a brief recess to discuss the matter with the Honorable Thomas J. Carroll, the presiding judge of the Marion County Superior Court, Civil Division, Room 6. Upon his return, Commissioner Haile denied Craig's motion as follows:

The motion for—to transfer to the—to have this case transferred to [Judge Carroll] citing Indiana Code 33–5.1-2-27. The Court has reviewed that statute and discussed it with Judge Carroll. That statute specifically applies to Magistrates which are created by State Law. I am a Master Commissioner appointed by Judge Carroll—or actually appointed by the General Term—Superior Court within their inherent authority—it is Judge Carroll's order that the—that the statute does not apply to Master Commissioners, and therefore, that motion is denied. So we are ready to proceed. . . .

*Appellant's Appendix* at 81. Following the evidentiary hearing, on March 29, 2001, Judge Carroll entered judgment in favor of Lynn, adopting the findings of fact, conclusions of law, and judgment recommended by Commissioner Haile.[4]

---

4. Included in the judgment is a painstakingly detailed visitation schedule. Commissioner Haile expressed the need for such detail at the conclusion of the hearing, saying, in part:

And I'm going to tell you when I'm done when I issue an order in this case it's going to be very specific. You violate it the next time you're going to jail, okay? You can appeal that but you'll sit in jail working on your brief. Because I'm tired of it. You're (sic) history is you don't want to comply with court orders and you wonder why you have these problems. You can save yourself a lot of trouble if you'd act like a decent person. I have never—in fifteen (15) years of practice and a year and a half on this bench—ever encountered such an unbelievable situation regarding visitation. It is just unbelievable to me. And you bet we're going to modify this thing and we're going to specifically put things in crystal clear language—unambiguous language that even you can't twist and turn into what you want it to be. And that way if you come back here and have not complied with it you'll suffer the consequences. Just get over your situation, all right? You're divorce. It's done. You appealed it. You lost. It's the

■ Craig argues on appeal that the trial court incorrectly concluded that IC § 33–5.1–2–27 does not apply to commissioners as well as magistrates. IC § 33–5.1–2–27(d) provides:

A party to a superior court proceeding that has been assigned to a magistrate appointed under this section may request that an elected judge of the superior court preside over the proceeding instead of the magistrate to whom the proceeding has been assigned. Upon a request made under this subsection by either party, the magistrate to whom the proceeding has been assigned shall transfer the proceeding back to the superior court judge.

Recognizing that the statute does not specifically mention commissioners, Craig relies on our opinion in *Ringham v. State,* 753 N.E.2d 29 (Ind.Ct.App.2001), which nevertheless held that the statute also applies to commissioners. In *Ringham,* we stated that the statute could not be more clear and concluded that when the defendant requested that the regular sitting judge preside over his case, it was the commissioner's duty to transfer the proceeding to the judge. *Id.* at 35 (noting that "[t]his is not a discretionary matter").

■ Our supreme court, however, recently granted transfer and vacated our opinion in *Ringham.* Even more recently, the court has issued its opinion in *Ringham,* affirming in part and reversing in part our opinion. *See Ringham v. State,* 768 N.E.2d 893 (2002). The court disagreed with our conclusion that Alex Murphy was sitting as a commissioner rather than a validly appointed judge pro tempore and stated:

order of the court. We're going to modify it. . . .

Ringham contends that, if Judge Murphy was sitting as a commissioner, [IC § 33–5.1–2–27(d)] required him to transfer the proceedings back to Judge Pratt when Ringham objected to his presiding. We need not resolve this claim because we do not agree that Judge Murphy was sitting as a commissioner.

768 N.E.2d at 897. In light of this, we are now writing on a clean slate and must determine whether the legislature intended IC § 33–5.1–2–27 to apply to commissioners as well as magistrates.

A statute should be construed so as to ascertain and give effect to the intention of the legislature as expressed in the statute. In so doing, the objects and purposes of the statute in question must be considered as well as the effect and consequences of such interpretation. When interpreting the words of a single section of a statute, this court must construe them with due regard for all other sections of the act and with regard for the legislative intent to carry out the spirit and purpose of the act. We presume that the legislature intended its language to be applied in a logical manner consistent with the statute's underlying policy and goals. Statutes relating to the same general subject matter are in pari materia and should be construed together so as to produce a harmonious statutory scheme. Courts are not bound to adopt a construction that would lead to manifest absurdity in order that the strict letter of the statute may be adhered to. They will rather look to the intention of the legislature, as gathered from the import of the whole act, and will carry out such intention as thus obtained.

*Appellee's Appendix* at 42–43.

*Fuller v. State,* 752 N.E.2d 235, 237–38 (Ind.Ct.App.2001) (citations omitted).

A Marion Superior Court master commissioner's authority is derived from Ind. Code Ann. § 33–5.1–2–11(e) (West 1996). This provision provides that a master commissioner has the same powers and duties prescribed for a magistrate, which are set out in Ind.Code Ann. § 33–4–7–4 through IC § 33–4–7–8.[5] *Id.; see also Dearman v. State,* 632 N.E.2d 1156, 1158 (Ind.Ct.App. 1994) ("master commissioner has the same powers and duties as are prescribed by statute for a magistrate"), *trans. denied.*

Lynn bases much of her argument on the incorrect notion that magistrates and commissioners have different powers, in that magistrates may enter final orders, conduct a sentencing hearing, and impose sentence in criminal cases, and commissioners may not. From this she reasons that the legislature intended the duty to transfer a proceeding to the elected judge to apply only to magistrates, because magistrates allegedly have more expansive powers. *See* Appellee's Brief at 7 ("[i]t is this very basic difference between the two judicial officers that gives rise to the duty for magistrates of Marion County to transfer a case to the elected judge upon a party's request"). We reiterate that magistrates and commissioners have identical authority. In particular, they both have the power in a criminal trial to enter a final order, conduct a sentencing hearing, or impose a sentence. *See Offringa v. State,* 637 N.E.2d 190 (Ind.Ct.App.1994) (holding that master commissioner had authority to enter final order on petition for revocation of probation, pursuant to IC § 33–4–7–8).

In practicality, especially with respect to parties in a judicial proceeding, the concepts of magistrates and commissioners are virtually synonymous. The legislature has made this so by specifically granting to commissioners powers and duties consonant with those of a magistrate. We do not believe the legislature intended to grant parties a right to transfer a proceeding to the elected judge only when a magistrate has been assigned to the proceeding. This would lead to an illogical and absurd result, creating an unprecedented and unexplainable distinction between the judicial powers and duties of magistrates and commissioners. Considering the statutory scheme as a whole, we conclude that the legislature intended IC § 33–5.1–2–11 to apply to both magistrates and commissioners.

Based on the foregoing, we conclude that Commissioner Haile improperly presided over the evidentiary hearing. Therefore, we are compelled to reverse the trial court's judgment and remand this

---

**5.** IC § 33–4–7–4 (West 1996) sets out the judicial acts a magistrate may perform, such as conduct pretrial hearings, receive a jury's verdict, and set bail. IC § 33–4–7–5 (West 1996) provides that a magistrate may serve as a judge pro tempore or special judge. IC § 33–4–7–6 (West 1996) allows the court to assign administrative duties to a magistrate. IC § 33–4–7–7 (West 1996) states that, except as provided in IC § 33–4–7–8(b) (West 1996), a magistrate does not have the power of judicial mandate and may not enter a final appealable order unless sitting as a judge pro tempore or

special judge. Finally, IC § 33–4–7–8 provides:

(a) Except as provided under subsection (b), a magistrate shall report findings in an evidentiary hearing, a trial, or a jury's verdict to the court. The court shall enter the final order.

(b) If a magistrate presides at a criminal trial, the magistrate may do the following:

(1) Enter a final order.

(2) Conduct a sentencing hearing.

matter for a new hearing.[6]

Judgment reversed and remanded.

VAIDIK, J., and BARNES, J., concur.

(3) Impose a sentence on a person convicted of a criminal offense.

6.  We observe that Craig's request for Judge Carroll to preside was quite probably a delay tactic used as a last-ditch effort on the day of the hearing, as it followed on the heels of the denial of his motion for continuance and was included with a motion for change of judge. We note, however, that the timeliness of Craig's request was neither addressed in the record nor raised in Lynn's appellate brief. Moreover, IC § 33–5.1–2–27 does not specifically set forth time limits for making such a request.