Dewayne SPANN, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A05–9308–CR–295.

Court of Appeals of Indiana, Fifth District.

April 12, 1994.

Belle T. Choate, Indianapolis, for appellant.

Pamela Carter, Atty. Gen., Dana A. Childress–Jones, Deputy Atty. Gen., Indianapolis, for appellee.

SHARPNACK, Chief Judge.

Dewayne Spann appeals from his convictions of carrying a handgun without a license and aggravated battery. We affirm.

Spann raises the following restated issues for our review:

1. whether there is sufficient evidence supporting Spann's conviction of aggravated battery;

2. whether the State met its burden in rebutting Spann's claim of self-defense; and

3. whether the jury reached inconsistent verdicts when it found Spann not guilty of attempted murder but guilty of aggravated battery.

The facts most favorable to the conviction of aggravated battery are as follows. On July 10, 1992, Phillip K. Brown was attending the Black Expo in downtown Indianapolis, Indiana. Brown was accompanied by his sister, three cousins, and a friend named Neal Lloyd. While at the Black Expo, Brown encountered Spann, whom he had known since childhood. During this meeting, Brown and Spann spoke for approximately twenty minutes to a half hour, and Spann introduced his girl friend to Brown. Brown and Spann then parted company.

Later that evening, as Brown and Lloyd were preparing to leave the Expo, they again encountered Spann and his girl friend. Spann's girl friend shoved Brown and accused him of grabbing her buttocks. Brown denied grabbing the woman's buttocks, and Spann stated that he knew that Brown would not do anything like that. The two men then shook hands, Spann stated, "Everything is cool. Be cool, man," and Brown raised his hands and held up the peace sign. Record, pp. 125–26. Brown had set his beer bottle on the ground and did not have a weapon in his hands. While Brown's hands were still in the air, Spann took out a gun that he had been carrying in his back pocket, pointed the gun at Brown's midsection, and shot Brown in the stomach. After shooting Brown, Spann took his girl friend's hand and the couple left. Brown was transported to Wishard hospital by ambulance. Brown underwent surgery, remained in the hospital for

approximately two weeks, and wore a colostomy bag for approximately one month after being discharged from the hospital.

In July, 1992, Spann was charged by information with attempted murder and carrying a handgun without a license. In December, 1992, an amended information was filed charging Spann with aggravated battery. Following a trial by jury, Spann was found not guilty of attempted murder, guilty of carrying a handgun without a license, and guilty of aggravated battery.

■ The first issue Spann raises for our review is whether there is sufficient evidence supporting his conviction for aggravated battery. Specifically, Spann contends that there is insufficient evidence supporting the intent element of the crime. As Spann acknowledges, when we review the evidence supporting a conviction, we may not reweigh the evidence or judge the credibility of the witnesses. *Washington v. State* (1982), Ind., 441 N.E.2d 1355, 1358. Where the evidence is in conflict, we are bound to view only that evidence which is most favorable to the verdict and judgment of the trial court. *Id.* If there is substantial evidence supporting the judgment, we must affirm. *Hutchinson v. State* (1985), Ind., 477 N.E.2d 850, 855.

Indiana Code § 35–42–2–1.5 provides:

"A person who knowingly or intentionally inflicts injury on a person that creates a substantial risk of death or causes serious permanent disfigurement or protracted loss or impairment of the function of a bodily member or organ commits aggravated battery, a Class B felony."

I.C. § 35–42–2–1.5. "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." I.C. § 35–41–2–2(b). "A person engages in conduct 'intentionally' if, when he engages in the conduct, it is his conscious objective to do so." I.C. § 35–41–2–2(a).

■ As noted by the State, because intent is a mental function, absent an admission by the defendant, it must be determined from a consideration of the defendant's conduct and the natural and usual consequences thereof. *Metzler v. State* (1989), Ind., 540 N.E.2d 606,

609. The trier of fact usually must resort to "reasonable inferences based upon an examination of the surrounding circumstances to determine whether, from the person's conduct and the natural consequences that might be expected from that conduct, a showing or inference [of] the intent to commit that conduct exists." *Id.*

We believe that there was ample evidence from which the jury could conclude beyond a reasonable doubt that Spann knowingly or intentionally inflicted an injury on Brown that created a substantial risk of death or caused a protracted loss or impairment of a bodily member or organ. The jury was free to draw reasonable inferences from the evidence presented to determine Spann's intent when he shot Brown at close range in the abdomen. *Metzler*, 540 N.E.2d at 609.

■ The next issue Spann raises for our review is whether the State met its burden in rebutting Spann's claim of self-defense. When reviewing a question of whether the State negated the defendant's claim of self-defense beyond a reasonable doubt, our standard is the same as in any other challenge to the sufficiency of the evidence. *Hinkle v. State* (1984), Ind., 471 N.E.2d 1088, 1089, *post-conviction relief denied, Hinkle v. State* (1990), Ind.App., 569 N.E.2d 349, *trans. denied.* We will view only that evidence most favorable to the State and the reasonable inferences to be drawn therefrom; we will not reweigh the evidence. *Almodovar v. State* (1984), Ind., 464 N.E.2d 906, 908. "A conviction in spite of a claim of self-defense will be reversed only if no reasonable person could say that the self-defense issue had been proved beyond a reasonable doubt." *Id.* at 909.

"When a self-defense claim is raised casting some reasonable doubt as to guilt, the State has the burden of proving beyond a reasonable doubt that the defendant did not meet at least one of the elements necessary to prove that justification. *Cox v. State* (1981), [275 Ind. 636], 419 N.E.2d 737; *Loyd v. State* (1980), 272 Ind. 404, 398 N.E.2d 1260. Self-defense is proved by showing that the defendant acted without fault, was in a place where he had a legal right to be, and was in real danger of

death or great bodily harm or was in such apparent danger as caused him in good faith to fear death or bodily injury."

*Almodovar*, 464 N.E.2d at 908–09. In support of his assertion that the State failed to meet its burden in rebutting his claim of self-defense, Spann points to evidence which supports his version of events just prior to the shooting. He points to his own testimony that, among other things, he believed that Brown carried a knife and that he shot his gun at the ground in order to try and escape, because he believed that Brown would hurt him and his girl friend unless Brown was frightened away. Spann invites us to reweigh the evidence, an invitation which we are not free to accept. *Id.* at 908. Based on our consideration of the evidence most favorable to the jury's determination, set forth *supra*, we conclude that the State met its burden in disproving one of the elements of Spann's claim of self-defense. There was ample evidence from which a reasonable juror could conclude beyond a reasonable doubt that Spann, in light of the circumstances known to him, could not have entertained a good faith belief that he was in danger of death or great bodily harm. *Martin v. State* (1987), Ind., 512 N.E.2d 850, 851–52; *Brumfield v. State* (1982), Ind., 442 N.E.2d 973, 976 (defendant was not acting in self-defense when he shot victim where victim had no weapon and did not appear to be threatening the defendant in a way that would justify the use of such force).

■ The last issue Spann raises for our review is whether the jury reached inconsistent verdicts when it found Spann not guilty of attempted murder but guilty of aggravated battery. Spann contends that the jury reached inconsistent verdicts because the conduct described in Count I, attempted murder, is the same conduct described in Count III, aggravated battery. He argues that it is reasonable to conclude that the jury accepted his version of events leading up to the shooting, specifically Spann's testimony that he shot at the ground instead of at Brown, in order to acquit him of attempted murder. Therefore, Spann argues, the jury's guilty verdict on the aggravated battery count is irreconcilable with the acquittal on the attempted murder count, and the jury

must have ignored the evidence and compromised its verdict.

■ Although verdicts may be so extremely contradictory and irreconcilable as to require corrective action by this court, ordinarily, where a defendant is acquitted of some charges and convicted of others, the results will survive a claim of inconsistency where the convictions are supported by sufficient evidence. *Jackson v. State* (1989), Ind., 540 N.E.2d 1232, 1234. In our review of a claim of inconsistent verdicts, we will not speculate about the jury's thought processes or motivations. *Id.* Perfect logical consistency is not required, and only extremely contradictory and irreconcilable verdicts warrant corrective action. *Townsend v. State* (1986), Ind., 498 N.E.2d 1198, 1200.

In the present case, the jury could have concluded that although Spann did not shoot Brown with the intent to kill him, Spann did intentionally inflict on Brown an injury that created "a substantial risk of death or [caused] serious permanent disfigurement or protracted loss or impairment of the function of a bodily member or organ." I.C. § 35–42–2–1.5; *see Straub v. State* (1991), Ind., 567 N.E.2d 87, 91–92 (guilty verdict for battery with a deadly weapon was not fatally inconsistent with not guilty verdict for attempted murder). As we already have determined, the evidence supporting the conviction for aggravated battery is sufficient. We agree with the State that Spann's position is without merit and there is no basis for corrective action by this court.

**AFFIRMED.**

BARTEAU and RILEY, JJ., concur.