Arthur SMITH, Defendant–Appellant,

v.

STATE of Indiana, Plaintiff–Appellee.

No. 49S00–9808–CR–465.

Supreme Court of Indiana.

June 28, 2000.

Monica Foster, Hammerle Foster Allen & Long–Sharp, Indianapolis, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

DICKSON, Justice

The defendant-appellant, Arthur Smith, was convicted of the August 8, 1997, murder[1] of Karlin Winters. We affirm, concluding that the trial court did not err in its refusal of tendered instructions regarding citizen's arrest, its denial of a challenge for cause to a prospective juror, and its admission of a firearm into evidence.

### Jury Instruction

■ The defendant claims that the trial court erred in refusing to give his tendered instructions regarding a citizen's power of arrest and use of force. The defendant challenges the trial court's refusal of two instructions, the defendant's tendered instructions numbers 2 and 3:

DEFENSE TENDERED INSTRUCTION 2

Any person may arrest any other person if:

(1) The other person committed a felony in his presence;

(2) A felony has been committed and he has probable cause to believe that the other person has committed that felony; or

(3) A misdemeanor involving a breach of the peace is being committed in his presence and the arrest is necessary to prevent the continuance of the breach of the peace.

DEFENSE TENDERED INSTRUCTION 3

A person other than a law enforcement officer is justified in using reasonable force against another person to effect an arrest or prevent the other person's escape if

(1) a felony has been committed; and

(2) there is probable cause to believe the other person committed that felony. However, such a person is not justified in [using] deadly force unless that force is justified under section 2 of this chapter (self-defense).

Record at 90, 91.

The jury was instructed regarding the defenses of self-defense and accident. The defendant argues, however, that his defense at trial was that he shot the victim accidentally or in self-defense while attempting to effectuate a citizen's arrest after having been robbed earlier that evening. The State argues that the citizen's arrest instructions were properly refused because they were not supported by the evidence and not relevant to the issues in the case.

■ A trial court's decision to instruct the jury is within its sound discretion, and we review that decision for an abuse of discretion. *Benefiel v. State*, 716 N.E.2d 906, 914 (Ind.1999); *Harrison v. State*, 699 N.E.2d 645, 649 (Ind.1998). We consider: (1) whether the refused instruction correctly stated the law; (2) whether evidence supported giving the instruction; and (3)

1. IND.CODE § 35–42–1–1.

whether it was adequately covered by other instructions. *Amburgey v. State,* 696 N.E.2d 44, 46 (Ind.1998); *Wrinkles v. State,* 690 N.E.2d 1156, 1161 (Ind.1997); *Griffin v. State,* 644 N.E.2d 561, 562 (Ind. 1994).

The evidence at trial indicated that on the date of the charged offense, the defendant, his adult son, Michael Hart, and several others were engaged in a dice game, and the defendant won several hundred dollars. As the game broke up, numerous young men stood around the defendant's vehicle, and one of them displayed a gun and demanded the defendant's money, which the defendant surrendered. The robber and several others then told the defendant and his son to get out of the neighborhood, and the robber fired a shot into the rear of the vehicle in which the defendant and his son were sitting, but neither was injured. They drove away but returned shortly afterwards, both armed with handguns. They repeatedly drove past a residence where they had seen Ralph Fisher, age 20, who had been present at the dice game. The defendant approached the house and confronted Fisher's step-father, Cecil Sinkfield, and stated that Fisher had been involved in the robbery and knew who had robbed the defendant and that the defendant wanted his money back. When Fisher did not come out or provide any information, the defendant and his son drove off. They had traveled only a short distance when the defendant observed a boy on a bicycle. The defendant testified that the boy was the one who had robbed him and that the boy pulled out a gun when he saw the defendant. The defendant contends that he then put his handgun out the car window, shouted "stop," swerved his car into the bike, struck the bike, and stopped his car. The defendant alleges that, when he applied his brakes, his gun accidentally discharged. The boy, sixteen-year-old Karlin Winters, attempted to run away but collapsed a short distance away and died from a gunshot wound that entered his lower back and exited on the right side of his chest.

Other trial evidence contradicts the claim that Winters had been involved in the robbery of the defendant. Fisher testified that, at the time the defendant was robbed and just before his rear window was shot out, Fisher saw a different person, Floyd Thomas, armed with a gun, talking to the defendant. Fisher stated that Winters was not present at the dice game robbery incident. The defendant testified that he attempted to call 911 twice—first after he was robbed, and next after he shot Winters—but reached a busy signal each time.

The defendant urges that the evidence permits an inference that he was looking for the principal in the robbery in order to arrest him and that this inference is particularly supported by his testimony that he told Winters to "stop" when he saw him. To the contrary, we find no substantial evidence that the defendant was actually attempting to arrest Winters or prevent his escape pursuant to our citizen's arrest statute. IND.CODE § 35–41–3–3. At most, the evidence reflects that the defendant was engaged only in self-help to recover his property, not in assisting law enforcement. This does not support the giving of the requested instructions. *See Thrash v. State,* 690 N.E.2d 355, 357 (Ind. Ct.App.1998). The trial court did not err in refusing the tendered instructions.

### Jury Selection

■ The defendant also claims that the trial court erroneously denied one of his challenges for cause to a prospective juror, thus requiring him to use one of his peremptory challenges to excuse the juror. Defense counsel made five challenges for cause. The court granted two and denied three. In addition to the challenges for cause, the defendant used ten peremptory challenges. The defendant claims that the trial court's denial of his motion to excuse for cause forced him to use all of his peremptory challenges and thus arbitrarily

reduced the number of challenges available to him.

The jury selection statute provides in pertinent part:

The following are good causes for challenges to any person called as a juror in any criminal trial: ...

(13) That, from defective sight or hearing, ignorance of the English language, or other cause, the person is unable to comprehend the evidence and the instructions of the court.

IND.CODE § 35–37–1–5(a)(13). The decision to grant a challenge for cause is within the trial court's discretion because it can best assess the demeanor of prospective jurors as they answer the questions posed by counsel. *Walker v. State,* 607 N.E.2d 391, 395 (Ind.1993); *Daniel v. State,* 582 N.E.2d 364, 371 (Ind.1991). We will disturb the trial court's decision only if we find that its authority was used illogically or arbitrarily. *Walker,* 607 N.E.2d at 395.

The defendant challenges the trial court's denial of his challenge for cause to one particular prospective juror, asserting that it fell within the "other cause" portion of this statute because the juror claimed he would probably be distracted. The State acknowledges that this juror testified during voir dire that people were traveling in from overseas to meet with him concerning business matters and that he would be distracted such that he could not listen and give full attention to the evidence. The State argues, however, that, even if the "other cause" exception applies, this prospective juror was not "unable to comprehend the evidence and the instruction of the court," as specified in the statute. The juror was also asked questions about his personal beliefs with regard to the use of weapons and self-defense. In each case, he expressed strong opinions but stated that he could set aside his beliefs to evaluate the evidence without bias. The State urges that this provided the trial court with a basis for finding the juror to be careful and intelligent enough to overcome his distractions.

We find that the trial court's decision that this prospective juror was capable of fulfilling the requirements of a juror in an impartial manner was not illogical or arbitrary. We find no error on this issue.

### Firearm Evidence

The defendant next claims that the trial court erred in admitting into evidence over his objection State's Exhibit 21, a Taurus .357 revolver that was found in the defendant's home but was not shown to be the murder weapon.

The trial court is accorded wide discretion in ruling on the admissibility and relevance of evidence. *Timberlake v. State,* 690 N.E.2d 243, 256 (Ind.1997); *Hobbs v. State,* 548 N.E.2d 164, 166 (Ind. 1990). We review a trial court's evidentiary decision for abuse of discretion and will reverse when the decision is clearly against the logic and effect of the facts and circumstances. *Timberlake,* 690 N.E.2d at 256; *Joyner v. State,* 678 N.E.2d 386, 390 (Ind.1997). Even if proffered evidence or testimony is only marginally relevant, it is within the sound discretion of the trial court to admit it. *Thompson v. State,* 671 N.E.2d 1165, 1171 (Ind.1996); *Bieghler v. State,* 481 N.E.2d 78, 88–89 (Ind.1985).

The defendant testified that on the night he shot Winters, he was carrying a 9mm TEK firearm. Other witnesses testified that the gun he carried at the time of the shooting was not a revolver but rather looked like a 9mm firearm. Sinkfield testified that the defendant and his son, each wielding weapons, came looking for Fisher and the person who had robbed them. Sinkfield testified that the defendant carried a revolver, that Hart carried a semi-automatic weapon, and that Exhibit 21 was similar to the revolver that the defendant had pointed at him. Although the revolver was not identified as the murder weapon, there was evidence that this revolver or one similar to it was in the possession of the two defendants near the time when they pursued Winters.

The resulting relevance, although arguably marginal, is sufficient to support the trial court's decision to admit the evidence. Furthermore, because the evidence indicated that the defendant had a valid license to carry a firearm, the likelihood of prejudice is diminished. We decline to find that the trial court abused its discretion in admitting the evidence.

### Conclusion

The judgment of the trial court is affirmed.

SHEPARD, C.J., and SULLIVAN, BOEHM, and RUCKER, JJ., concur.