Steven **KENDALL,** Appellant–Defendant,

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A02–0205–CR–392.

Court of Appeals of Indiana.

June 17, 2003.

Lesa Lux Johnson, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Jodi Kathryn Stein, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

SHARPNACK, Judge.

Steven Kendall appeals his convictions for attempted murder as a class A felony[1] and aggravated battery as a class B felony.[2] Kendall raises three issues, which we restate as:

I. Whether the trial court abused its discretion by admitting evidence regarding a prior statement of a witness;

II. Whether the evidence is sufficient to sustain Kendall's conviction for attempted murder as a class A felony; and

III. Whether the evidence is sufficient to sustain Kendall's conviction for aggravated battery as a class B felony.[3]

We affirm in part, reverse in part, and remand.

The relevant facts follow. Kendall, Wesley Young, and Kendrick Morris often stayed at the McGinty residence on Carrollton Avenue in Indianapolis. However, on April 13, 2001, Kendall, Young, and Morris were told that they could no longer stay at the residence or "hang out" there. Transcript at 292. On April 14, 2001, Tyona LeShaun Mickens was leaving the McGinty residence. While standing across the street from the residence, Mickens saw a maroon sports utility vehicle ("SUV") stop in front of the McGinty residence and two men dressed in black get out of the SUV. At the same time, thirteen-year-old Tiara McGinty was about to leave her home when she observed two men dressed in black hooded shirts standing on the porch holding guns. The front door of the residence was open but the screen door was closed. Tiara was standing inside the house behind the screen door when the men began shooting at the door. Tiara turned to fall on the ground, and the men shot her in the legs and back. One bullet entered one of her thighs and exited out the other thigh. Another bullet entered her back, hit her lung, bruised her heart, broke her rib, hit her liver and lodged in her stomach. Mickens saw the two men get into the SUV and leave. Tiara had surgery to remove the bullet in her stomach and was hospitalized for eighteen days.

On May 14, 2001, Indianapolis Police Department Detective Jeffrey Wager interviewed Mickens. Detective Wager took a statement from Mickens during which she identified Young and Morris as the shooters and Kendall as the driver of the SUV.

---

1. Ind.Code §§ 35–41–5–1 (1998), 35–42–1–1 (Supp.2001).

2. Ind.Code § 35–42–2–1.5 (1998).

3. Kendall also argues that the trial court committed fundamental error when it instructed the jury regarding the elements of attempted murder and accomplice liability for attempted murder. We need not address this issue due to our resolution of the sufficiency of the evidence to sustain his attempted murder conviction.

The State charged Kendall with attempted murder as a class A felony and aggravated battery as a class B felony. At trial, Mickens repudiated her out-of-court statement and testified that she could not identify the persons involved in the shooting. She further testified that Detective Wager told her the identity of the shooters and asked her to lie. Kendall's counsel moved to suppress the out-of-court statement, alleging that it was coerced, was improper impeachment evidence, and, contrary to the State's contention, was not admissible under Indiana Evidence Rule 801(d). The trial court held a hearing outside the jury's presence, listened to the taped statement, and heard testimony from Detective Wager. Following the hearing, the trial court found that Mickens's statement was voluntary and denied the motion to suppress. The trial court admitted the taped statement into evidence and the State played the tape for the jury. Detective Wager later testified about his May 14, 2001 interview with Mickens and the statement he took from her. Kendall's counsel objected on the same grounds articulated during the suppression hearing, and the trial court allowed the detective's testimony.

The jury found Kendall guilty as charged.[4] The trial court entered judgments of conviction on both the attempted murder and the aggravated battery convic-tions. At the sentencing hearing, the trial court merged the aggravated battery conviction with the attempted murder conviction and sentenced Kendall to thirty years in the Indiana Department of Correction.[5]

## I.

■■■■ The first issue is whether the trial court abused its discretion by admitting evidence regarding Mickens's prior statement to Detective Wager. The trial court is given wide discretion in ruling upon the admissibility of evidence. *Smith v. State,* 730 N.E.2d 705, 708 (Ind.2000), *reh'g denied.* We review a trial court's evidentiary decision for an abuse of discretion and will reverse when the decision is clearly against the logic and effect of the facts and circumstances. *Id.*

■■■■ Kendall first argues that the State called Mickens as its witness for an impermissible purpose. Kendall contends that the sole reason the State called Mickens as a witness was to impeach her and present inadmissible evidence. A party is "forbidden from placing a witness on the stand when the party's sole purpose in doing so is to present otherwise inadmissible evidence cloaked as impeachment." *Appleton v. State,* 740 N.E.2d 122, 125 (Ind.2001). However, the evidence Kendall claims is inadmissible related to Mick-

---

4. The State also charged both Morris and Young with attempted murder as a class A felony, aggravated battery as a class B felony, and unlawful possession of a firearm by a serious violent felon as a class B felony. Morris, Young, and Kendall were tried together. The jury found Morris and Young guilty as charged. We affirmed their convictions on appeal. *See Young v. State,* No. 49A02–0205–CR–393, slip at 8, 783 N.E.2d 803 (Ind.Ct. App. Jan. 17, 2003), *trans. denied; Morris v. State,* No. 49A05–0205–CR–225, slip at 11, 783 N.E.2d 810 (Ind.Ct.App. Feb. 5, 2003).

5. The parties do not raise the issue of whether Kendall's convictions for both attempted murder and aggravated battery violated the prohibition against double jeopardy. *See, e.g., Carter v. State,* 750 N.E.2d 778, 780 (Ind.2001) (holding that a judgment of conviction constitutes punishment even if the defendant avoids imprisonment); *Davis v. State,* 770 N.E.2d 319, 324 (Ind.2002) (holding that "a reasonable possibility exists that the jury used the evidence proving the elements of attempted murder to also establish the elements of aggravated battery"). Because we reverse Kendall's conviction for attempted murder, we need not address this issue.

ens's prior statement identifying Kendall as the driver of the SUV. In addition to that evidence, Mickens testified regarding the maroon SUV stopping in front of the McGinty residence and the two men dressed in black getting out of the SUV, shooting into the house, and returning to the SUV. Thus, in addition to the allegedly inadmissible evidence of Mickens's prior statement, Mickens also testified regarding the vehicle that the suspects were driving, how the suspects were dressed, and the suspects' actions. Consequently, we cannot say that the State placed her on the stand for the sole purpose of impeaching her and admitting otherwise inadmissible evidence. *See, e.g., id.* (holding that "we cannot definitively declare that the State placed [the witness] on the stand for the sole purpose of impeaching him").

 Kendall also argues that the trial court abused its discretion by admitting Mickens's prior inconsistent statement and by failing to issue a limiting instruction to the jury. The State contends that the statement was admissible under Ind. Evidence Rule 801(d)(1)(c). We addressed the same issue in the two related appeals. *See Young,* No. 49A02–0205–CR–393, slip at 8; *Morris,* No. 49A05–0205–CR–225, slip at 11. We held that:

> Rule 801(d)(1)(C) provides that statements are not hearsay when the "declarant testifies at the trial . . . and is subject to cross-examination concerning the statement, and the statement is . . . one of identification of a person made shortly after perceiving the person." Here, Mickens testified at trial and was sub-

ject to cross-examination concerning her out-of-court statement. And at trial, Mickens testified that her previous identification of Young as one of the shooters was false. Finally, in analyzing whether an identification was made "shortly after perceiving the person," we held in *Robinson v. State,* 682 N.E.2d 806, 810–811 (Ind.Ct.App.1997), that the trial court properly admitted evidence of a witness's out-of-court identification that was given two months and thirteen days after that witness observed a shooting. Mickens's out-of-court statement was given only one month after she observed the shooting. Thus, the trial court properly admitted the statement under Rule 801(d)(1)(C).[6]

Still, Young contends that the admissibility of Mickens's statement should be analyzed under Evidence Rule 613, not the hearsay rules, and directs us to *Pruitt v. State,* 622 N.E.2d 469 (Ind. 1993), and *Appleton v. State,* 740 N.E.2d 122 (Ind.2001). In *Pruitt,* 622 N.E.2d at 472, the trial court allowed the jury to hear an audiotaped statement of a witness who, at trial, recanted her prior statement and claimed that what she had said on tape was a lie. The defendant argued on appeal that because the witness admitted at trial that she had lied on tape, she impeached herself. As a result, the defendant claimed that it was improper for the State to continue the impeachment by playing the tape to jury. *Id.* at 473. On appeal, our supreme court determined that the court did not err when it allowed the State to

---

**6.** Kendall also argues that Mickens's statement was not admissible under Ind. Evidence Rule 801(d) because it was not made under oath. However, the requirement that the prior statement be made under oath applies only to Ind. Evidence Rule 801(d)(1)(A). Ind. Evidence Rule 801(d)(1)(C) does not require that the prior statement be made under oath. *See,*

*e.g., Robinson v. State,* 682 N.E.2d 806, 811 (Ind.Ct.App.1997) (holding that a prior statement not made under oath was properly admitted under Ind. Evidence Rule 801(d)(1)(C) where the witness's statement was one of identification made shortly after perceiving the person).

play the tape for the jury because "the jury was faced with the question of when [the witness] was telling the truth." *Id.* And because the witness claimed that she lied on tape as a result of duress, the State was allowed to play the tape in attempt to convince the jury that she was not under duress at the time she gave the statement. *Id.* In addition, the trial court instructed the jury that it was to consider the tape for the limited purpose of demonstrating that the witness had not been subjected to duress. *Id.*

Similarly, in *Appleton,* 740 N.E.2d at 124, two witnesses who had given out-of-court statements implicating the defendant repudiated their statements at trial. The trial court in that case allowed the prosecutor to read the witnesses' direct quotes from their pretrial statements and inquire about the accuracy of those statements. *Id.* The trial court also admonished the jury that it was not to treat the State's examination as substantive evidence. *Id.* On appeal, the court reaffirmed the general rule that, under Rule 613, once a witness has admitted an inconsistent prior statement, she has impeached herself and further evidence is unnecessary for impeachment. *Id.* at 125. Despite finding error in the State's method of impeaching these witnesses, the court concluded that the error was harmless. *Id.* at 127.

Here, Young relies on *Pruitt* and *Appleton* to support his claim that, under Rule 613, once Mickens admitted that she had lied in her out-of-court statement, she impeached herself and no additional extrinsic evidence should have been admitted. Additionally, while he concedes that, under *Pruitt,* it was proper for the court to admit Mickens's taped statement, it should have been admitted not as substantive evidence, but for the limited purpose of allowing the jury to decide whether Mickens was coerced into giving the statement. As such, Young claims that it was error for the court to admit the tape *without* giving the jury a limiting instruction.

But Young's reliance on *Pruitt, Appleton,* and Rule 613 is misplaced. Unlike in this case, neither *Pruitt* nor *Appleton* involved a witness's prior inconsistent statement that is one of identification. And Rule 801(d)(1)(C), not Rule 613, specifically addresses the admissibility of prior identification statements by a witness. Additionally, evidence admitted under Rule 801(d) is admissible as substantive evidence. *See Appleton,* 740 N.E.2d at 124 (explaining that Rule 801(d) limits admission of prior statements as substantive evidence to certain circumstances). Therefore, we conclude that the trial court did not err when it allowed the State to play Mickens's out-of-court statement to the jury as substantive evidence and without a limiting instruction.

*Young,* No. 49A02–0205–CR–393, slip at 4–7; *Morris,* 49A05–0205–CR–225, slip at 5–7 (footnote added). Consequently, we conclude that the trial court did not abuse its discretion by admitting evidence regarding Mickens's statement and did not err by failing to give a limiting instruction.

## II.

 The next issue is whether the evidence is sufficient to sustain Kendall's conviction for attempted murder. When reviewing claims of insufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses. *Jordan v. State,* 656 N.E.2d 816, 817 (Ind.1995), *reh'g denied.* Rather, we look to the evidence and the reasonable inferences therefrom that support the verdict. *Id.* We will affirm the conviction if there exists evidence of probative value from which a

reasonable jury could find the defendant guilty beyond a reasonable doubt. *Id.*

■ Although Kendall was charged with attempted murder as a principal, he was convicted based upon evidence that he was Morris's and Young's accomplice. "In Indiana, there is no distinction between the responsibility of a principal and an accomplice." *Wise v. State,* 719 N.E.2d 1192, 1198 (Ind.1999). Thus, a defendant "may be charged as a principal yet convicted on proof that he or she aided another in the commission of a crime." *Id.*

■ Our supreme court held in *Bethel v. State,* 730 N.E.2d 1242, 1246 (Ind.2000), that to convict a defendant for the offense of aiding an attempted murder, the State must prove:

(1) that the accomplice, acting with the specific intent to kill, took a substantial step toward the commission of murder, and

(2) that the defendant, acting with the specific intent that the killing occur, knowingly or intentionally aided, induced, or caused the accomplice to commit the crime of attempted murder.

*Id.* Thus, to convict Kendall of aiding in the attempted murder, the State was required to prove that: (1) Morris and Young, acting with the specific intent to kill, took a substantial step toward the commission of murder, and (2) Kendall, acting with the specific intent that the killing occur, knowingly or intentionally aided, induced, or caused Morris and Young to commit the crime of attempted murder. *See id.*

With respect to whether the evidence is sufficient to find that Morris and Young, acting with the specific intent to kill, took a substantial step toward the commission of murder, Kendall argues that the evidence is insufficient to establish that Mor-

ris and Young acted with the specific intent to kill. The State contends that "[t]here was no ambiguity in the evidence about Morris and Young's specific intent to kill." Appellee's Brief at 7. We agree.

■ "The intent to kill may be inferred from the deliberate use of a deadly weapon in a manner likely to cause death or serious injury. We have found sufficient evidence for conviction when the evidence indicates that a weapon was fired in the direction of the victim." *Bethel,* 730 N.E.2d at 1245. Kendall relies upon *Bethel* and *Kiefer v. State,* 761 N.E.2d 802 (Ind.2002). In *Bethel,* our supreme court reversed one of the defendant's convictions for attempted murder as an accomplice where the record was "devoid of any probative evidence" that the defendant's cohort was pointing his firearm at the victim when he fired the weapon. 730 N.E.2d at 1245. In *Kiefer,* a defendant was charged with attempted murder after allegedly shooting his gun toward a boy walking down the street in front of the defendant's residence. 761 N.E.2d at 803–805. Our supreme court reversed the defendant's conviction for attempted murder because the evidence was insufficient to establish an intent to kill. *Id.* at 806. Our supreme court held that the record revealed no motive, the defendant's conduct at the scene was inconsistent with that of a man who intended to kill, and the defendant's actions after the shooting did not support the conclusion that he intended to kill. *Id.*

■ Here, the evidence demonstrated that Morris, Young, and Kendall had often stayed at the McGinty residence. However, on the day before the shooting, they were told that they could no longer stay at the residence or "hang out" there. Transcript at 292. On April 14, 2001, Morris and Young walked up to the residence just as Tiara was about to leave. The front door of the residence was open, but the

screen door was closed. Tiara saw two men dressed in black hooded shirts standing on the porch holding guns. Tiara was standing inside the house behind the screen door when the men began shooting at the door. The evidence indicates that Tiara was in clear view of the shooters and weapons were fired in Tiara's direction. Moreover, the evidence demonstrates a motive for the shooting. Thus, Kendall's reliance upon *Bethel* and *Kiefer* is misplaced. The evidence is sufficient to establish that Morris and Young acted with the specific intent to kill and took a substantial step toward the commission of murder.

With respect to whether the evidence is sufficient to demonstrate that Kendall, acting with the specific intent that the killing occur, knowingly or intentionally aided, induced, or caused Morris and Young to commit the crime of attempted murder, Kendall first argues that there was no evidence as to his intent. Our supreme court addressed a similar issue in *Bethel.* There, our supreme court reversed one of the defendant's convictions for attempted murder because the evidence was insufficient to prove that the defendant, acting with the specific intent that the killing occur, knowingly or intentionally aided, induced, or caused the accomplice to commit the crime of attempted murder. *Bethel,* 730 N.E.2d at 1246. The victim in *Bethel* interrupted a robbery of a store by Bethel and Crenshaw. *Id.* at 1244. Bethel pointed his gun at the victim, and the victim ran out of the store. *Id.* Outside, Crenshaw pointed his gun at the victim and the victim heard gunshots. *Id.* at 1244–1245. Our supreme court held that "[d]espite substantial evidence that the defendant was engaged in protracted criminal activity with Crenshaw, with both men carrying guns, threatening several people at gunpoint, and robbing or attempting to rob several people, we find the evidence insuf-

ficient to prove that the defendant had the specific intent to kill [the victim] or the specific intent that Crenshaw kill [the victim]." *Id.* at 1246.

 Here, the evidence demonstrated that Kendall was driving the SUV and Morris and Young were passengers. Kendall stopped the SUV in front of the McGinty residence and Morris and Young exited the vehicle with their weapons. Morris and Young walked up to the residence. As Tiara was about to leave her home, she saw the two men standing on the porch holding guns. Tiara was standing inside the house at the screen door, and the men shot through the door. Morris and Young then got back into the SUV, and Kendall drove away. The State points out that Kendall "did not oppose the commission of the offense by Morris and Young" and "did not drive away in surprise when the shooting began." Appellee's Brief at 7. However, from the evidence presented at trial, it appears that Tiara approached the door after the shooters left the SUV. Although the evidence is sufficient to demonstrate Morris's and Young's intent because they shot Tiara as she stood in clear view at the screen door, no evidence was presented at trial to demonstrate that Kendall was acting with the specific intent that Morris and Young kill Tiara when he drove them to the residence. Under these circumstances, as in *Bethel,* we conclude that the evidence is insufficient to prove that Kendall had a "specific intent that the killing occur." Consequently, the evidence is insufficient to sustain Kendall's conviction for attempted murder as a class A felony, and we reverse the conviction. *See, e.g., Bethel,* 730 N.E.2d at 1246.

### III.

The next issue is whether the evidence is sufficient to sustain Kendall's conviction

for aggravated battery as a class B felony. As noted above, when reviewing claims of insufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses. *Jordan,* 656 N.E.2d at 817. Rather, we look to the evidence and the reasonable inferences therefrom that support the verdict. *Id.* We will affirm the conviction if there exists evidence of probative value from which a reasonable jury could find the defendant guilty beyond a reasonable doubt. *Id.*

 Kendall makes no specific argument related to the sufficiency of the evidence to sustain his aggravated battery conviction. Rather, in discussing the sufficiency of the evidence to sustain his attempted murder conviction, Kendall simply argues that "[t]he same set of facts and insufficiency of the evidence argument would apply to the conviction for Count II, aggravated battery...." Appellant's Brief at 10. However, the *Bethel* analysis for attempted murder as an accomplice is inapplicable to the crime of aggravated battery as an accomplice because the intent requirements are different. *See, e.g., Spann v. State,* 632 N.E.2d 741, 744 (Ind. Ct.App.1994) (holding that an acquittal for attempted murder was not contradictory to a conviction for aggravated battery because the jury could have concluded that although the defendant did not shoot the victim with the intent to kill him, the defendant did have the requisite intent to commit aggravated battery).

 Under the accomplice liability statute, the State had to prove beyond a reasonable doubt that Kendall knowingly or intentionally aided, induced, or caused Morris and Young to commit the crime of aggravated battery.[7] Ind.Code § 35–41–2–4 (1998); *see, e.g., Porter v. State,* 743 N.E.2d 1260, 1266 (Ind.Ct.App.2001) (discussing the accomplice liability statute with respect to the offense of criminal recklessness). "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." Ind.Code § 35–41–2–2(b) (1998). "A person engages in conduct 'intentionally' if, when he engages in the conduct, it is his conscious objective to do so." I.C. § 35–41–2–2(a) (1998). Absent an admission by a defendant, intent "must be determined from a consideration of the defendant's conduct and the natural and usual consequences thereof." *Spann,* 632 N.E.2d at 743. The trier of fact usually must resort to "reasonable inferences based upon an examination of the surrounding circumstances to determine whether, from the person's conduct and the natural consequences that might be expected from that conduct, a showing or inference [of] the intent to commit that conduct exists." *Id.*

 Under an accomplice liability theory, "the evidence need not show that the accomplice personally participated in the commission of each element of a particular offense." *Cohen v. State,* 714 N.E.2d 1168, 1178 (Ind.Ct.App.1999), *trans. denied.* Accomplice liability "applies to the contemplated offense and all acts that are a probable and natural consequence of the concerted action." *Wieland v. State,* 736 N.E.2d 1198, 1202 (Ind.2000).

---

7. The elements of aggravated battery are set forth in Ind.Code § 35–42–2–1.5, which provides that:
 A person who knowingly or intentionally inflicts injury on a person that creates a substantial risk of death or causes:
 (1) serious permanent disfigurement;
 (2) protracted loss or impairment of the function of a bodily member or organ; or
 (3) the loss of a fetus;
 commits aggravated battery, a Class B felony.

Thus, the accomplice is liable "for everything ... which follows incidentally in the execution of the common design, as one of its natural and probable consequences, even though it was not intended as a part of the original design or common plan...." *Fox v. State,* 497 N.E.2d 221, 227–228 (Ind.1986). The trier of fact considers the following factors to determine whether a defendant aided another in the commission of a crime: (1) presence at the scene of the crime; (2) companionship with another engaged in a crime; (3) failure to oppose the commission of the crime; and (4) the course of conduct before, during, and after the occurrence of the crime. *Wieland,* 736 N.E.2d at 1202.

▮ Although Kendall argues that no substantive evidence was admitted to establish that he was the driver of the SUV, we held in Part I that Mickens's statement was substantive evidence pursuant to Ind. Evidence Rule 801(d)(1)(C). Thus, viewing the evidence in a light most favorable to the verdict, the evidence demonstrated that Kendall was the driver of the SUV. As the driver of the SUV, Kendall delivered Young and Morris to the scene of the crime, waited while they approached the McGinty residence with their weapons, and helped Young and Morris flee the scene after shooting Tiara. Kendall did nothing to oppose the commission of the crime and, as the State points out, Kendall did not drive away in surprise when Young and Morris started shooting.

An analysis of the above factors demonstrates that the jury had evidence of probative value from which it could find Kendall guilty beyond a reasonable doubt of aggravated battery as an accomplice. *See, e.g., id.,* 736 N.E.2d at 1203 (holding that the evidence was sufficient to sustain the defendant's convictions based upon accomplice liability where he accompanied his friend to a store knowing that the friend was armed and intended to rob the store, did nothing to oppose the commission of the crime, and did not withdraw from the enterprise). Even though because of *Bethel v. State* we have held that the evidence was insufficient to demonstrate that Kendall had a specific intent to kill Tiara, the jury could have inferred that Kendall knowingly or intentionally aided or assisted Young and Morris in committing aggravated battery. *See, e.g., Straub v. State,* 567 N.E.2d 87, 91 (Ind.1991) ("It is entirely possible for the jury to have concluded that the requisite intent to commit murder was not present, but that Straub had the requisite intent to batter."). Consequently, although we reverse Kendall's conviction for attempted murder, we affirm his conviction for aggravated battery and remand for the trial court to sentence Kendall for the aggravated battery conviction.

For the foregoing reasons, we reverse Kendall's conviction for attempted murder as a class A felony, affirm Kendall's conviction for aggravated battery as a class B felony, and remand for the trial court to vacate the attempted murder conviction and sentence Kendall on the aggravated battery conviction.

Affirmed in part, reversed in part, and remanded.

SULLIVAN, J., concurs.

KIRSCH, J., concurs in part and dissents in part with separate opinion.

KIRSCH, Judge, concurring in part and dissenting in part.

I concur with the majority's resolution of the issues regarding the prior statement of a witness and the sufficiency of the evidence to support Kendall's aggravated battery conviction; from its holding that the evidence is insufficient to support the attempted murder conviction, however, I respectfully dissent.

The majority relies upon our supreme court's decisions in *Bethel v. State,* 730 N.E.2d 1242 (Ind.2000) and *Kiefer v. State,* 761 N.E.2d 802 (Ind.2002). I believe both are distinguishable from the facts presented here. In *Bethel,* the victim interrupted a robbery. Bethel pointed his gun at the victim, and the victim ran out of the store where Bethel's accomplice pointed his gun at the victim and fired. Our supreme court held that there was insufficient evidence that Bethel had the specific intent to kill the victim or that his accomplice kill the victim. In *Kiefer,* the court reversed the conviction where there was no evidence that the defendant had a motive to kill the victim, his conduct was inconsistent with that of a person who intended to kill, and the defendant's activities after the shooting did not support the conclusion that he intended to kill the victim.

Here, unlike *Bethel,* this was not a robbery gone wrong, and there is no ambiguity about the accomplices' specific intent to kill. Unlike *Kiefer,* Kendall and his accomplices had a motive; his actions were consistent with those of a person participating in a murder; and his actions afterward in driving the getaway car support the conclusion that he intended to kill the victim. Here, following their eviction from the home, Kendall drove his accomplices to the residence where they exited the vehicle, went directly to the front door of the house, pulled out their guns and shot the victim. Afterwards, they returned to the car and left together. I believe the evidence supports the inference that Kendall had the specific intent that his accomplices kill the victim and is sufficient to support the conviction. I would affirm the decision of the trial court in all particulars.