**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Oct 04 2012, 9:10 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JEFFREY D. STONEBRAKER**
Clark County Chief Public Defender
Jeffersonville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GEORGE P. SHERMAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

DAVID ALLEN JONES,                    )
                                      )
    Appellant-Defendant,              )
                                      )
    vs.                               )     No. 10A05-1201-CR-16
                                      )
STATE OF INDIANA,                     )
                                      )
    Appellee-Plaintiff.               )

APPEAL FROM THE CLARK CIRCUIT COURT
The Honorable Vicki L. Carmichael, Judge
Cause No. 10D01-1104-FA-19

October 4, 2012

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Chief Judge**

## Case Summary and Issues

Following a jury trial, David Jones was convicted of attempted murder, a Class A felony, and sentenced to forty years. Jones appeals his conviction, raising two issues for our review, which we restate as: 1) whether the trial court erred in denying his motion to continue the trial; and 2) whether there was sufficient evidence to support his conviction. Concluding that the trial court did not abuse its discretion in denying the late-filed motion to continue and that sufficient evidence supports the conviction of attempted murder, we affirm.

## Facts and Procedural History

On March 28, 2011, Jones, Brandon Henson. and a third, masked man entered the home Joshua McLain shared with his mother, Sharon. Joshua and Sharon had seen a car arrive at their home via a security camera feed, and when Jones tapped on the window and asked to be let in, Joshua let him in through the kitchen door. Jones had rented a room at the McLain house prior to this date. After he moved out, Jones's step-daughter, Paschaline, and Henson, her boyfriend, had lived there for several weeks in early 2011, but had also moved out prior to this date.

Jones left the door open and Henson and the third man also entered the house. Henson shot Joshua, and as Joshua lost consciousness, he observed Henson and Jones put on masks and walk down the hallway toward his mother's bedroom. Joshua was rendered a quadriplegic as a result of the gunshot wound.

Sharon, armed with a handgun, exited her bedroom when she heard what sounded like two shots. Sharon saw two masked men in the hallway, one of whom raised his gun and fired at her. Sharon believed the man who fired was Jones, based upon her previous

acquaintance with him in comparison with the physical size of the shooter. Sharon fired one shot in return and ran back into her bedroom to call 911.

The shooting was apparently precipitated by an accusation that Joshua had molested Paschaline's son several weeks earlier. Other violent incidents between Joshua and Jones and Henson had occurred after the accusation and prior to the shooting.

Jones was charged with the attempted murder of Sharon, a Class A felony. Henson was charged with the attempted murder of Joshua, and at the State's request, the cases were joined for trial.[1] Jones filed a motion for speedy trial, and a jury trial was set for November 1, 2011. In addition, a final pre-trial conference was scheduled for October 18, 2011, at which time the trial court set a motion to continue/plea deadline of October 21, 2011. On October 26, 2011, the trial court took judicial notice on the record of the fact the motion to continue/plea deadline had expired and a jury had been called to appear for selection on November 1. On October 31, 2011, Jones filed a motion to continue the jury trial, alleging that on October 27, 2011, counsel learned that Joshua had been deposed on October 21, 2011, and that she had not been invited to participate in the deposition: "[i]n reading the written transcript, counsel for . . . Jones determined that further investigation is necessary, to-wit: defense believes medical/hospital records of Joshua McLain would provide impeachment material." Appellant's Appendix at 58. Counsel also alleged that "in the last several days," she had learned that police interviewed the McLains' next-door neighbor but the neighbor was not included in the incident report as a witness. Id. Jones therefore requested a continuance of the jury trial

---

[1] Henson has also appealed his conviction, and we issue an opinion in his case today, as well. See Henson v. State, Cause No. 10A01-1201-CR-13 (Ind. Ct. App., Oct. 4, 2012).

3

in order to investigate Joshua's medical records and the neighbor. At a final hearing on pre-trial motions on October 31, 2011, counsel reiterated the reasons for the motion: that "there appears to be some statements that were made in a transcript that was taken of Joshua McLain that I think [Jones] needs to be prepared to respond to that, those statements in some way" and that the McLains live in a duplex and "if" the neighbor on the other side had been interviewed by police, she "was not listed as a witness on the police incident report and I just would like the opportunity to follow up to see what, what, if anything, she could add to the information that we have . . . ." Addendum to Transcript at 5. The trial court denied the motion to continue.

The jury trial began as scheduled on November 1, 2011, and on November 3, 2011, the jury found Jones guilty of attempted murder. Jones was sentenced to forty years at the Department of Correction with five years suspended to probation. Jones now appeals. Additional facts will be supplied as necessary.

<u>Discussion and Decision</u>

I.  Motion to Continue

A.  Standard of Review

Indiana Code section 35-36-7-1 provides the procedure to be followed in seeking a continuance because of the absence of evidence or of a witness. <u>See</u> Ind. Code § 35-36-7-1(a), (b). Section 35-36-7-1(d) also provides that a defendant "must file an affidavit for a continuance not later than five (5) days before the date set for trial. If a defendant fails to file an affidavit by this time, then he must establish, to the satisfaction of the court, that he is not at fault for failing to file the affidavit at an earlier date." When a defendant's motion to continue satisfies the statutory criteria, the defendant is entitled to a

4

continuance as a matter of right. Byrd v. State, 707 N.E.2d 308, 311 (Ind. Ct. App. 1999). Jones acknowledges, however, that he did not meet all of the requirements of section 35-36-7-1 and that "the trial court was not under an obligation to grant his request." Appellant's Brief at 9.

Where a motion for continuance is filed on non-statutory grounds or fails to meet the statutory requirements, we review the trial court's decision to grant or deny the continuance for an abuse of discretion. Tharpe v. State, 955 N.E.2d 836, 843 (Ind. Ct. App. 2011), trans. denied. An abuse of discretion occurs when a decision is clearly against the logic and effect of the facts and circumstances before the court or where the record demonstrates prejudice to the defendant from a denial of the continuance. Id. Continuances to allow additional time for preparation are generally disfavored in criminal cases. Id.

### B. Denial of Continuance

Jones contends the trial court abused its discretion in denying his motion to continue because information gained by allowing additional time for investigation "may have created doubt about [his] guilt." Appellant's Br. at 6. Jones cites our supreme court's statement in Flowers v. State, that when a continuance is at the trial court's discretion, the trial court "should give heed to the diverse interests of the opponent of the motion which would be adversely impacted by altering the schedule of events as requested in the motion, and give heed as well to the diverse interests of the movant to be beneficially impacted by altering the schedule." 654 N.E.2d 1124, 1125 (Ind. 1995) (quoting Vaughn v. State, 590 N.E.2d 134, 135 (Ind. 1992)).

Jones acknowledges his case had been pending for over six months at the time he requested the continuance. On August 16, 2011, his case was set for trial on December 6, 2011. As a consequence of filing a request for speedy trial on October 6, 2011, his trial date was moved up to November 1, 2011. Nonetheless, he had five months to prepare even prior to the speedy trial request, which only advanced his trial date by one month. There was ample time for Jones to depose Joshua, to seek discovery of his hospital and medical records, and to have investigated the neighbor as a potential witness. The probable cause affidavit states that "officers were dispatched to [ ] Kenwood Drive Apt A" in reference to a shooting. Appellant's App. at 10. That neighbors could have been in close proximity at the time of the shooting was evident from the face of the probable cause affidavit and would have been known to Jones as he had stayed at the McLains' residence. Moreover, the State noted at the October 31, 2011, hearing that "the police talk to different people and anybody who has relevant or inculpatory or [exculpatory] information, they know to put on their reports. So, if it wasn't included, I don't have any reason to believe there's anything wrong with the case." Addendum to Tr. at 5-6.

None of the reasons offered by Jones in his motion to continue were such that a continuance was appropriate on the literal eve of trial, and he has not alleged that he was prejudiced by the denial of a continuance such that he was not able to present a full and fair defense without the information. See Tharpe, 955 N.E.2d at 843. The trial court did not abuse its discretion in denying the late-filed motion to continue.

## II. Sufficiency of Evidence

### A. Standard of Review

Our standard of review for sufficiency claims is well settled. In reviewing a claim challenging the sufficiency of the evidence, we do not reweigh the evidence or reassess the credibility of the witnesses. Bond v. State, 925 N.E.2d 773, 781 (Ind. Ct. App. 2010), trans. denied. We consider only the evidence most favorable to the judgment and the reasonable inferences drawn therefrom. Id. We will affirm if the evidence and those inferences constitute substantial evidence of probative value to support the verdict. Id.

### B. Evidence of Attempted Murder

Jones contends the State failed to prove by sufficient evidence that he was the person who shot at Sharon or that he had the intent to kill her. To convict Jones of Class A felony attempted murder as charged here, the State had to prove beyond a reasonable doubt that Jones "with the intent to commit Murder, to-wit: intentionally killing Sharon McClain [sic], did engage in conduct that constituted a substantial step toward the commission of Murder, to-wit: by shooting at Sharon McClain [sic] with a handgun." Appellant's App. at 8; see Ind. Code §§ 35-41-5-1, 35-42-1-1. A conviction for attempted murder requires proof of a specific intent to kill. Mendenhall v. State, 963 N.E.2d 553, 568 (Ind. Ct. App. 2012), trans. denied. Intent to kill may be inferred from the deliberate use of a deadly weapon in a manner likely to cause death or serious injury, for instance, by firing a weapon in the direction of the victim. Henley v. State, 881 N.E.2d 639, 652 (Ind. 2008).

Here, the evidence demonstrated that Jones was present at the McLain home the morning of the shootings. Both Joshua and Sharon testified they saw Jones arrive via a

security camera. Jones was well-known to the McLains because he had lived with them for quite a while. Jones himself testified he was at the house when Joshua was shot, although he testified that he had arrived on his own to retrieve some things he had left there and that while he was in the kitchen with Joshua, two masked men entered the house, shot Joshua, and headed toward the hallway, at which point he ran from the house. Jones also testified that he was upset with Joshua because he believed Joshua had molested his grandson, and he admitted that he had assaulted him just a few days prior. Joshua testified that after he was shot, he saw Jones put on a ski mask and move with Henson toward the hallway leading to Sharon's bedroom. Sharon testified that one of the masked men in the hallway fired a shot toward her. A bullet was recovered from her bedroom door. Although Sharon testified she could "not say one hundred percent definitively" that the shooter was Jones, she knew Jones was in her home, recognized the shooter's eyes as Jones's, and the shooter fit Jones's size, being 5'10" or 5'11" and 175 pounds. Tr. at 171, 175. Jones testified that he did not own a gun, and Sharon testified that she had never known him to have a gun, but Joshua testified that Jones "had threats of being able to have a gun . . . ." Id. at 86.

The evidence most favorable to the jury's verdict indicates that Jones was at the McLain home during the shooting and had a motive to participate in the violence. The evidence is sufficient to establish that Jones was the shooter, acted with the specific intent to kill, and took a substantial step toward the commission of murder when he fired a gun down a hallway toward Sharon. See Kendall v. State, 790 N.E.2d 122, 130 (Ind. Ct. App. 2003) (evidence that victim was in clear view of two men in hooded sweatshirts with guns when they fired their weapons and that the defendants had a motive for the shooting

8

was sufficient to prove the men acted with specific intent to kill and took a substantial step toward commission of murder), trans. denied.

Conclusion

The trial court did not abuse its discretion in denying Jones's non-statutory motion to continue filed on the eve of trial. Sufficient evidence was presented from which a reasonable jury could find beyond a reasonable doubt that Jones committed attempted murder and his conviction is therefore affirmed.

Affirmed.

BAKER, J., and BRADFORD, J., concur.